S04G1126. In the Interest of I. S. et al., children.

(607 SE2d 546)

Hunstein, Justice.

A petition alleging deprivation was filed in February 2003 regarding I. S. and his twin sister, D. S., after one-month-old I. S. was found to have a broken left femur, a broken left fibula and another leg fracture that was in the healing stage. In an order filed May 8, 2003, the juvenile court of Fulton County found that the infants were deprived based on medical evidence adduced at an earlier hearing.[1] At that time the court entered an order of disposition permitting the infants to remain with their parents (hereinafter "appellants"), subject to conditions and limitations prescribed by the court, including supervision by the Department of Family and Children Services (DFCS). See OCGA § 15-11-55 (a) (1). Although this order constituted a final order that could be directly appealed, see *In the Interest of J. P.*, 267 Ga. 492 (480 SE2d 8) (1997) and *Sanchez v. Walker County Dept. of Family &c. Svcs.*, 235 Ga. 817 (221 SE2d 589) (1976), appellants did not appeal the ruling. Nor did they file a motion for new trial, see *In the Interest of T. A. W.*, 265 Ga. 106 (454 SE2d 134) (1995), or a motion pursuant to OCGA § 15-11-40 to modify or vacate the juvenile court's order.

At a review hearing conducted May 21, 2003, the court heard from the parties that appellants had complied with the conditions prescribed by the court and that the infants were "doing fine," although the results of medical testing undertaken to determine if I. S. suffered from a genetic disorder proved inconclusive.[2] DFCS recommended that the case be closed. The transcript of the hearing reflects that appellants expressly requested the court to "heed the advice of [DFCS] and formally close this matter" against them. The juvenile court orally announced that despite the absence of an explanation for I. S.'s injuries, it would accept DFCS's recommendation to close out the matter in light of appellants' behavior in cooperating with DFCS and diligently attending to their children's medical needs. A written order reflecting the court's findings was entered July 18, 2003.[3]

---

[1] Evidence was presented at a February 2003 hearing that I. S.'s fractures were the result of non-accidental trauma and were typical of injuries found in abused children. I. S.'s parents could not provide an explanation for his injuries and although the possibility that I. S. had osteogenesis imperfecta ("OI"), a genetic disorder characterized by bones that break easily, had been raised by medical professionals from the start of the investigation into I. S.'s injuries, the results of his medical tests for OI were not yet available.

[2] The court heard from the parties that while OI had not been detected in its most severe form, other forms of OI were not ruled out, particularly because I. S. displayed certain other traits of the disorder.

[3] The July order reiterated the previous finding of deprivation; included a verbatim list of the evidentiary bases for that finding; repeated the conditions that had been imposed on

Notwithstanding their knowledge of the court's intended ruling prior to the expiration of the 30-day period in which to file a notice of appeal from the May 8 finding of deprivation, OCGA § 5-6-38 (a), appellants chose to wait until August 15, 2003 to file their appeal "from the Finding of Fact[,] Judgment and Disposition of the Juvenile Court of Fulton County entered on May 8, 2003, and further entered on July 18, 2003, whereby the Court found that said minor children were deprived." Appellants' three enumerations of error focused solely upon the juvenile court's evidentiary finding that the infants were deprived.[4] The Court of Appeals accurately recognized that appellants challenged only matters addressed in the May 8 deprivation order. That court then dismissed appellants' appeal on the basis that it was untimely because the May 8 order was entered more than 30 days before the notice of appeal was filed. *In the Interest of I. S.*, 265 Ga. App. 759 (595 SE2d 528) (2004). The Court of Appeals also found that the appeal had been rendered moot by appellants' retaining custody and the case being closed by the trial court. Id. at 760. We granted appellants' petition for certiorari and hold that although the Court of Appeals erred by finding appellants' appeal to be untimely, it correctly determined that the appeal was moot. Accordingly, we affirm.

In direct appeals taken under OCGA § 5-6-34 (a) (1), appellate courts must review all rulings rendered in the case that are raised on appeal and which may affect the proceedings below, without regard to the appealability of the ruling standing alone and without regard to whether the ruling was final or appealable by some other express provision of law. Id. at (d). Thus, a party may challenge the propriety of an earlier, unappealed deprivation order in the course of a timely direct appeal taken pursuant to OCGA § 5-6-34 (a) (1) from a subsequent order arising out of the deprivation proceeding. See *In the Interest of S. J.*, 270 Ga. App. 598 (607 SE2d 225) (2004). The fact that deprivation orders may be directly appealed does not change this result because while parties may appeal a deprivation order within 30 days of its entry, *In the Interest of A. V. B.*, 267 Ga. 728, 729 (3) (482 SE2d 275) (1997), given the express language in OCGA § 5-6-34 (d), they are not automatically penalized for failing to do so. Parties are foreclosed from subsequently challenging the conclusive effect of a deprivation order only when the order has been reviewed on appeal

---

appellants; and then concluded with the findings from the May hearing and an order closing the matter.

[4] Appellants contended that there was no evidence at all to support the court's finding that D. S. was deprived; that no clear and convincing evidence supported the court's finding that I. S. was deprived; and that the court improperly relied upon appellants' lack of explanation for I. S.'s injuries in finding the infants to be deprived.

and the challenged portion of the order either was or could have been considered by the appellate court, see *Stewart v. Milliken*, 277 Ga. 659 (593 SE2d 344) (2004); OCGA § 9-11-60 (h),[5] or where the deprivation order is used in unrelated proceedings, such as a proceeding to terminate parental rights. See *In the Interest of C. M.*, 258 Ga. App. 387 (1) (574 SE2d 433) (2002).[6] Thus, because appellants' challenge to the unappealed May 8 deprivation order was brought as part of a timely appeal from the July 18 order entered in the same deprivation proceeding, the Court of Appeals erred by dismissing the case on the basis that appellants' challenge to the May 8 deprivation order was untimely. Compare *In the Interest of S. J.*, supra (Court of Appeals properly entertained mother's challenge to earlier, unappealed deprivation order in course of timely appeal from later order in the deprivation proceeding).

Consistent with its requirement that appellate courts address only those rulings that "may affect the proceedings below," OCGA § 5-6-34 (d) expressly provides that "[n]othing in this subsection shall require the appellate court to pass upon questions which are rendered moot." "The general rule is that appellate courts do not consider moot questions. Mootness is a question of court policy based on the theory that courts do not give opinions on abstract propositions of law that do not involve an actual controversy between parties." (Footnotes omitted.) *Hopkins v. Hamby Corp.*, 273 Ga. 19 (538 SE2d 37) (2000). "The existence of an actual controversy is fundamental to a decision on the merits by this court." (Footnote omitted.) *Bowers v. Bd. of Regents*, 259 Ga. 221-222 (378 SE2d 460) (1989). In contrast to *In the Interest of S. J.*, supra, where the deprivation proceeding was on-going, custody had not been returned to the mother and the case had not been closed, an appellate ruling addressing the propriety of the May 8 deprivation order has no potential to "affect the proceedings below" because appellants have custody of their children and the July 18 order terminated the proceedings below. Although appellants assert, correctly, that the issues of deprivation and custody are separate and distinct, see *In the Interest of J. P.*, supra, 267 Ga. at 492,

---

[5] While parties are foreclosed from challenging the propriety of a deprivation ruling once it has been upheld on appeal, parties are not prevented from thereafter obtaining a modification or vacation of that ruling "on the ground that changed circumstances so require in the best interest of the child." OCGA § 15-11-40 (b). See also *Bruce v. Garges*, 259 Ga. 268, 270 (2) (379 SE2d 783) (1989) ("law of the case rule" applies where parties, issues and evidentiary posture of case remain the same).

[6] "Deprivation proceedings and parental rights termination proceedings are separate and distinct. [Cit.] Unappealed deprivation orders of the juvenile court may be used to establish that the children were deprived .... [Cit.] Because the parents did not appeal that decision regarding their children, they are bound by the determination that their children were deprived. [Cits.]" Id. at 387-388 (1).

we do not agree that the juvenile court's action in closing the case did nothing more than resolve the custody of appellants' children. The closing of the case necessarily constituted a ruling by the juvenile court that I. S. and D. S. no longer qualified as "deprived" under OCGA § 15-11-2 (8).[7]

There are exceptions to the mootness rule but they do not apply here. While the propriety of the May 8 deprivation order is undoubtedly of great concern to appellants, the case does not contain an issue of significant public concern, compare *Perdue v. Baker*, 277 Ga. 1, 3 (586 SE2d 606) (2003), nor does it come within the "narrow exception to the doctrine of mootness when the issue is capable of repetition and yet evades review." (Footnote omitted.) *Hopkins*, supra, 273 Ga. at 19. Appellants could have filed a motion for new trial or a notice of appeal challenging the propriety of the May 8 deprivation order within the 30-day period after it was rendered. They chose not to do so. Outside that 30-day period appellants still had the avenue of relief provided by OCGA § 15-11-40, see *In the Interest of B. S. H.*, 236 Ga. App. 879 (514 SE2d 70) (1999), yet they did not file a motion to vacate or modify pursuant to that statute. While a matter does not become moot if adverse collateral consequences continue to plague the affected party, *Parris v. State*, 232 Ga. 687, 689 (208 SE2d 493) (1974), appellants have not shown adverse collateral consequences on the record, *Baker v. State*, 240 Ga. 431 (241 SE2d 187) (1978); *Ritchie v. State*, 257 Ga. App. 149 (570 SE2d 435) (2002), and we decline to presume them under these circumstances. See *Spencer v. Kemna*, 523 U. S. 1, 17-18 (118 SC 978, 140 LE2d 43) (1998).[8]

Accordingly, the Court of Appeals correctly held that the case was moot by virtue of appellants retaining custody and the case being closed.

*Judgment affirmed. All the Justices concur.*

---

[7] Because the infants were previously found to be deprived after a hearing held on the petition alleging deprivation, the juvenile court was not required to dismiss the petition pursuant to OCGA § 15-11-56 (a) in order to close the case, after it was established at the subsequent hearing that the children no longer met the statutory definition of deprived. See OCGA § 15-11-58.1 (b) (juvenile court may terminate an order of disposition of a child adjudicated as deprived prior to its expiration "if it appears to the court that the purposes of the order have been accomplished").

[8] We do not address whether proof of the alleged prejudicial collateral consequence must meet the "concrete and continuing" standard in *Spencer v. Kemna*, supra, 523 U. S. at 7, or whether a lesser standard, such as reasonable probability, will suffice, see *Williams v. Ragaglia*, 802 A2d 778, 782-783 (Conn. 2002), because appellants here failed to make any showing of adverse collateral consequences. See id. at 782 and n. 12 (court "may retain jurisdiction when a litigant shows" consequences meeting court's standard when issue of adverse consequences was raised in trial court).

DECIDED JANUARY 10, 2005.

*Riddle & Schwartz, Jeffrey L. Riddle, Keilani E. Kimes*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Shalen S. Nelson, Senior Assistant Attorneys General, P. Brian Campbell*, for appellee.