A07A1182. IN THE INTEREST OF J. R. P., a child.

(652 SE2d 206)

RUFFIN, Judge.

Linda Pearson, J. R. P.'s maternal grandmother, appeals a juvenile court order finding J. R. P. deprived. For reasons that follow, we affirm.

This case involves a private deprivation petition and custody battle over J. R. P. between Pearson and Tameka Brown, J. R. P.'s cousin. The record shows that J. R. P.'s mother died shortly after his birth, and Pearson began caring for him. Pearson, however, never obtained legal custody or guardianship of J. R. P., and his putative father did not legitimate him, leaving J. R. P. with no legal custodian or guardian.

When J. R. P. was two years old, Brown filed a deprivation petition asserting, among other things, that he lacked a legal custodian. Brown and her husband also sought custody of him. Because no one had legal custody or guardianship of J. R. P., the juvenile court found him deprived.[1] It subsequently awarded temporary guardianship and custody to the Browns, pending resolution of the permanent custody issues.

In January 2005, the juvenile court held a hearing on the Browns' custody petition, at which numerous witnesses, including Pearson and the Browns, testified. Following the hearing, the juvenile court awarded the Browns permanent custody of J. R. P. Thereafter, Tameka Brown moved to dismiss her deprivation petition, asserting that because she and her husband had permanent custody of J. R. P., he no longer lacked a legal custodian, rendering the deprivation action moot. The juvenile court agreed and dismissed the petition.

1. Pearson challenges the juvenile court's deprivation ruling on various grounds, including that the court failed to follow procedural requirements, neglected to make necessary findings regarding reunification efforts, and improperly deemed J. R. P. deprived based on the "technicality" that he lacked a legal guardian.[2] As discussed below, however, we need not reach the merits of these arguments.

" 'It is well-settled that a person may only challenge a ruling which has adversely affected his or her own rights.' "[3] And a person who has not been aggrieved by a lower court judgment cannot challenge that ruling on appeal.[4] We recognize that Pearson is J. R. P.'s grandmother and cared for him for several years after his mother's death. But she admittedly was not his legal guardian or custodian, and she has pointed us to no legal basis through which she has a right to custody of the child. Pearson cannot show that the deprivation ruling adversely affected her *own* rights. Accordingly, she lacks standing to appeal the ruling.[5]

---

[1] A child who "[i]s without a parent, guardian, or custodian" is a deprived child under OCGA § 15-11-2 (8) (D).

[2] Although the juvenile court made its deprivation finding well over 30 days before Pearson filed her notice of appeal, "a party may challenge the propriety of an earlier, unappealed deprivation order in the course of a timely direct appeal . . . from a subsequent order arising out of the deprivation proceeding." *In the Interest of I. S.*, 278 Ga. 859, 860 (607 SE2d 546) (2005). This is true even if the party's enumerated errors relate solely to the earlier deprivation finding and do not address the subsequent order supporting the timely direct appeal. See id. at 860-861.

[3] *In the Interest of M. B. B.*, 241 Ga. App. 249, 250 (1) (a) (526 SE2d 76) (1999).

[4] See id.

[5] See id.; see also *In the Interest of A. D.*, 286 Ga. App. 352 (648 SE2d 786) (2007) (father who has not legitimated child born out of wedlock lacks standing to appeal a juvenile court order finding the child deprived); *In the Interest of R. N. O.*, 281 Ga. App. 161 (1) (635 SE2d 420) (2006) (grandmother lacked standing to contest the placement of her grandchild after termination of

Furthermore, even if Pearson had standing to challenge the deprivation order, her appeal could not succeed. The record shows that after the trial court found J. R. P. deprived and removed him from Pearson's home, it conducted a hearing on the custody petition and awarded permanent custody to the Browns. Pearson has not challenged the custody award.[6] And since the Browns now have legal custody of J. R. P., an appellate ruling addressing the propriety of the prior deprivation finding — which was based on J. R. P.'s lack of a legal custodian or guardian — "has no potential to 'affect the proceedings below.' "[7] The questions raised by Pearson, therefore, are moot.[8]

Appellate courts generally "do not consider moot questions," and the limited exceptions to the mootness rule do not apply in this case.[9] For example, although the "deprivation order is undoubtedly of great concern to [Pearson], the case does not contain an issue of significant public concern."[10] Furthermore, the issues raised by Pearson are not the type that are capable of repetition, yet evade review.[11] Pearson also has not argued — or shown — that adverse collateral consequences of the *deprivation* finding, as opposed to the custody order, continue to plague her.[12] In fact, she does not claim on appeal that the juvenile court erred in dismissing the deprivation action as moot. Accordingly, even if we had jurisdiction to consider Pearson's challenge to the deprivation order, that challenge would not result in reversal.

2. Finally, Pearson argues that the juvenile court erred in ordering her prior attorney and an attorney who purportedly appeared in the case as "next friend" of J. R. P. to pay attorney fees to the Browns and the guardian ad litem's office pursuant to OCGA § 9-15-14 (b).[13] The record shows, however, that the court assessed these fees against

---

the mother and father's parental rights); *In the Interest of B. R. W.*, 242 Ga. App. 232, 239-240 (3) (530 SE2d 5) (2000) (grandmother lacked standing to question the sufficiency of the State's search for suitable family members who could take custody of a child following termination of the mother's parental rights).

[6] The record shows that Pearson sought review of the custody order through the application procedures in OCGA § 5-6-35. She failed, however, to request review in a timely manner, and we dismissed her application.

[7] *In the Interest of I. S.*, supra at 861.

[8] See id.

[9] (Punctuation omitted.) Id.

[10] Id. at 862.

[11] See id.

[12] See id.

[13] The attorney who appeared as "next friend" of J. R. P. has moved for an extension of time to file a "reply brief," presumably as amicus curiae. See Court of Appeals Rule 26. The motion for extension of time is hereby GRANTED. The Court has considered the brief subsequently filed by the attorney.

the two lawyers — *not* Pearson.[14] Because Pearson was not aggrieved by the fee award, she lacks standing to challenge it, and we have *no* jurisdiction to address it on appeal.[15]

*Judgment affirmed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED SEPTEMBER 24, 2007 —

*Felisa M. Harris*, for appellant.
*Sandra D. Hicks, David L. Whitman*, for appellee.

---

[14] We note that the attorneys aggrieved by the fee award filed separate applications for discretionary appeal pursuant to OCGA § 5-6-35. We denied one application and dismissed the other as untimely.

[15] See *In the Interest of M. B. B.*, supra; see also *Felker v. Fenlason*, 197 Ga. App. 476, 476-477 (1) (398 SE2d 754) (1990) (attorney lacks standing to appeal award of attorney fees entered solely against his client), rev'd on other grounds, *Porter v. Felker*, 261 Ga. 421 (405 SE2d 31) (1991).