691 S.E.2d 892 (2010)
In the Interest of J.L.K., a child.
No. A09A2308.
Court of Appeals of Georgia.
March 16, 2010.
*893 Melinda M. Katz, Thomasville, for appellant.
J. David Miller, Dist. Atty., Laura A. Wood, Asst. Dist. Atty., for appellee.
ADAMS, Judge.
Following a hearing, J.L.K. was adjudicated delinquent for the offense of simple assault. Thereafter, he twice requested the trial court to reconsider, modify, or vacate various orders entered regarding his disposition. On appeal of the denial of the second motion, he raises ten enumerations of error, of which the State concedes all but two.
1. The circumstances of this appeal require that we, as a threshold matter, inquire into our own jurisdiction. See Segura v. State, 280 Ga.App. 685, 686(1), 634 S.E.2d 858 (2006).
The record shows the juvenile court ordered the child detained on September 18, 2008, that a delinquency petition was filed on October 1, and that following a hearing, the child was adjudicated delinquent on October 2. The court gave the child a "suspended short term program" of 30 hours of community service, and ordered that the child receive no more juvenile complaints while on adjudicated status with the court. Yet the court also ordered that the disposition of the case be postponed until further order of the court. As was made clear at the hearing, the court placed the child in the custody of his biological mother despite the fact that the grandmother was purported to be his legal guardian. In that regard, the court entered an order of "conditions of placement" which stated that the child was under the supervision of the Department of Juvenile Justice ("DJJ") but residing with the mother.
On December 22, 2008, the court ordered that J.L.K. be apprehended based upon drug possession and that he be sent to a "Short Term Program" of 60 days based on the original adjudication of delinquency, which program would run through February 20, 2009.
On January 21, 2009, J.L.K. filed a motion seeking modification of the terms of his probation and sentence. He argued that he had "further evidence," including that the mother had said that the child was not welcome in her home, and that it would be in the best interest of justice if the child were allowed to live with his grandmother. On February 5, 2009, the court ordered that the child undergo a psychological evaluation, and a hearing was scheduled for February 11 on the motion to modify. On February 12, the court entered several orders. It first reiterated that it found J.L.K. delinquent. The form order stated that the child should be committed to the DJJ and that the child was to be released into the custody of the Loftiss Regional Youth Detention Center pending placement by the DJJ. Yet the court also entered a protective order requiring the mother to comply with several conditions apparently designed to mandate her cooperation and *894 compliance with keeping the child in school and in treatment, including that the mother "ensure that said child receives [24] hours of supervision by a responsible adult." And the court ordered that the child's sentence to the "Short Term Program" be reduced and that the child be released, apparently into his mother's custody, on February 20, 2009.
On March 10, 2009, J.L.K. filed a second motion to reconsider. This time he asked the court "to hear further evidence" and to reconsider, vacate, or modify the disposition in the case and return the minor child to the grandmother. He alleged that a recent psychiatric evaluation of the grandmother indicated no "psychiatric illness that would impact her ability to raise and care for her two grandchildren," whereas the mother had failed to submit to any evaluation and had not maintained contact with the child. He invoked OCGA § 15-11-70(d) in support of the motion and requested a hearing on the matter, which was scheduled for April 2. The trial court denied this motion on May 27, and J.L.K. filed a notice of appeal on June 22, 2009.
In his second motion, J.L.K. essentially raised two statutory arguments for reconsidering the trial court's order. He argued that his motion was justified under OCGA § 15-11-70(d), which provides that a court "may terminate an order of disposition of a child adjudicated as delinquent or unruly ... if it appears to the court that the purposes of the order have been accomplished." Second, the invocation of "further evidence" in support of the motion, as well as the allegation of new psychiatric results, necessarily raises OCGA § 15-11-40(a)(3), which provides that a juvenile court order shall be set aside if newly discovered evidence so requires. J.L.K. filed a direct appeal from the denial of this motion. We consider whether such an appeal was proper.
At least one case from this Court holds that an appeal from the denial of an OCGA § 15-11-40 motion in a delinquency proceeding must be made in accordance with discretionary appeal procedure because "[n]o subsection of OCGA § 5-6-34(a) authorizes [a] direct appeal" of such an order. See In the Interest of B.S.H., 236 Ga.App. 879, 882, 514 S.E.2d 70 (1999). But recently, that aspect of B.S.H. has been expressly overruled by this Court. See In the Interest of J.N., 302 Ga.App. 631, 691 S.E.2d 396 (2010). Moreover, neither an order denying a motion under OCGA § 15-11-40 nor § 15-11-70 is itemized as being subject to the discretionary appeal procedure under OCGA § 5-6-35(a). "[T]he express mention of one thing implies the exclusion of another." Morton v. Bell, 264 Ga. 832, 833, 452 S.E.2d 103 (1995).
The remaining question is whether the denial of a motion to modify the disposition in a delinquency matter under either OCGA § 15-11-40 or § 15-11-70 is a final or interlocutory judgment. See OCGA § 5-6-34(a) and (b). Subsection (a)(1) of OCGA § 5-6-34 authorizes a direct appeal of the order in this case if the juvenile court's order is considered a "final judgment[ ], that is to say, where the case is no longer pending in the court below."[1]
In deprivation proceedings, it has been held that even juvenile court orders providing for the temporary, as opposed to permanent, legal custody of a child are final orders subject to direct appeal. See Sanchez v. Walker County, 235 Ga. 817, 221 S.E.2d 589 (1976). In Sanchez, the Supreme Court addressed whether temporary custody orders were final judgments as opposed to interlocutory judgments requiring a certificate of immediate review.[2] Id.; see also Sanchez v. Walker County Dept. of Family, etc., 135 Ga.App. 891, 892(2), 219 S.E.2d 583 (1975).[3] The Supreme Court concluded that orders providing for the temporary legal custody of *895 a child are final orders subject to direct appeal rather than an interlocutory appeal even though the only order that could be considered absolutely final in a deprivation matter would be an order terminating parental rights. Sanchez, 235 Ga. at 817, 221 S.E.2d 589.
Following that reasoning, this Court recently held that a juvenile court's order denying a motion under OCGA § 15-11-40(b) seeking a modification based on changed circumstances in a deprivation matter was a final judgment directly appealable under OCGA §§ 5-6-34(a)(1) and 15-11-3. In the Interest of J.N., 302 Ga.App. at 633, 691 S.E.2d 396. We hold that the same rule applies in this delinquency matter, which is also governed by the juvenile code. Thus, in this case, the denial of the March 10, 2009 motion was a final judgment and directly appealable.[4]
Given that this case is properly before us, the appellant may appeal the ruling on disposition as well as the original finding of delinquency. This point has been established in deprivation proceedings:
Although the juvenile court made its deprivation finding well over 30 days before [appellant] filed her notice of appeal, "a party may challenge the propriety of an earlier, unappealed deprivation order in the course of a timely direct appeal ... from a subsequent order arising out of the deprivation proceeding." In the Interest of I.S., 278 Ga. 859, 860, 607 S.E.2d 546 (2005). This is true even if the party's enumerated errors relate solely to the earlier deprivation finding and do not address the subsequent order supporting the timely direct appeal. See id. at 860-861, 607 S.E.2d 546.
In the Interest of J.R.P., 287 Ga.App. 621, 622(1), n. 2, 652 S.E.2d 206 (2007). The reasoning of the Supreme Court in In the Interest of I.S. is equally applicable to a delinquency proceeding. See also OCGA § 5-6-34(d).
2. J.L.K.'s first of ten enumerations of error challenges the sufficiency of the evidence of delinquency. The standard of review is the same as a criminal case:
In considering a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, we construe the evidence and every inference from the evidence in favor of the juvenile court's adjudication to determine if a reasonable finder of fact could have found, beyond a reasonable doubt, that the juvenile committed the acts charged.
(Punctuation omitted.) In the Interest of A.D., 282 Ga.App. 586, 587(1), 639 S.E.2d 556 (2006). And the rules of evidence apply to the adjudicatory phase of a delinquency hearing. See C.P. v. State, 167 Ga.App. 374, 375(2), 306 S.E.2d 688 (1983); J.B. v. State, 139 Ga.App. 545, 547(3), 228 S.E.2d 712 (1976).[5]
(a) In the delinquency petition it was alleged that the 15-year-old child committed a simple assault:
On or about the 13th day of September 2008, ... said youth did commit an act, to-wit: by yelling and cursing at [his grandmother], which placed [her] in reasonable apprehension of immediately receiving a violent injury....
In the unusual hearing in this case, only one witness testified. Michael Aranda of the Valdosta Police Department testified that J.L.K. "was supposedly causing a disruption in the lobby [of the hospital].... There was two people in the lobby. It was him and his grandmother." He continued, "And during this argument, I believe that she was seated and he was standing over her; and he was *896 yelling at her. Supposedly cussing at her." He added that as J.L.K.'s grandmother moved around the lobby, J.L.K. "followed her" and "kept following her around." He added that the grandmother "related to us... that she was afraid of him and maybe he was going to hurt her." Aranda also testified that J.L.K. told him that "he was showing his ass" and he admitted using profanity toward his grandmother. Finally, on cross-examination, Aranda admitted that there were no allegations that the child attempted to hit his grandmother and that he, Aranda, did not witness any of the events.
The court then took over and entered into a conversation with the grandmother, in which the court suggested that the grandmother had "a major problem" "[b]ecause [the child's] own mother won't raise him and look after him." The grandmother explained that she had had guardianship of the child since he was two weeks old. An unidentified woman who was not sworn in spoke up, presumably the child's mother, and said "[h]e never had a temper with me when he lived with me." The court then said, "Why don't you take him and raise him full time...." The court made other comments such as "This is the result of the way y'all have lived, all of you ... for the past 14, 15 years. Now it's in court. He's out of control.... He's headed for prison...." The court then questioned the grandmother, who was not under oath, about why she and J.L.K. were at the hospital in the first place, which revealed that J.L.K. was there because he had overdosed on a drug.
The court then raised the issue of disposition, and J.L.K. moved to dismiss on the ground that the evidence showed, at most, simple assault. The court responded as follows:
Well, I heard the evidence and what I heard, back when I grew up, was enough of a charge of simple capital felony; because my parents would've killed me if I had even thought about acting like that to anybody, particularly a grandparent or a parent. I understand your motion, but I'm going to deny it.
The court then continued to address disposition by obtaining information from defense counsel and ultimately ruled, among other things, that the child had to live with his mother and could have no contact with his grandmother. No evidence was offered in support of changing custody of the child from his grandmother to the mother, and no other evidence was presented.
(b) The crime of simple assault as alleged in this matter requires proof that J.L.K.'s actions placed his grandmother "in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20(a)(2). Here, the only evidence of that fact was hearsay. "Hearsay evidence is without probative value and will not establish fact in issue even in the absence of a timely objection." (Citation and punctuation omitted.) Calhoun v. State, 213 Ga.App. 375, 376(4)(a), 444 S.E.2d 405 (1994) (shoplifting conviction reversed for insufficient evidence because State relied upon hearsay). See also In the Interest of A.D., 282 Ga.App. at 589(2), 639 S.E.2d 556 (finding that inadmissible hearsay testimony has no probative value in the adjudicatory phase of a delinquency hearing); M.K.H. v. State, 135 Ga.App. 565, 569(2), 218 S.E.2d 284 (1975) ("The adjudication of delinquency was based on hearsay evidence and had no probative value."); Waldrip v. Head, 279 Ga. 826, 828(II)(A), 620 S.E.2d 829 (2005) (refusing to consider inadmissible hearsay on appeal despite the absence of any objection). The evidence, therefore, was insufficient to support the finding of delinquency. Accordingly, we reverse. All of the appellant's remaining enumerations of error become moot.
Judgment reversed.
BLACKBURN, P.J., and DOYLE, J., concur.
NOTES
[1] See also OCGA § 15-11-3 (for "final judgments of a juvenile court judge, appeals shall be taken to the Court of Appeals or the Supreme Court in the same manner as appeals from the superior court").
[2] For judgments that are not final or otherwise subject to direct appeal, an appellant must follow the procedure for obtaining interlocutory review found in OCGA § 5-6-34(b).
[3] Both Sanchez decisions predate the addition of the application procedure now found in OCGA § 5-6-35. See Ga. L. 1979, p. 619, § 1.
[4] Indeed, this Court routinely addresses appeals of the denial of similar motions in delinquency matters without having required an interlocutory application. See, e.g., In Interest of K.F., 299 Ga.App. 685, 683 S.E.2d 650 (2009) (appeal of motion to modify a juvenile court's order of commitment); In re T.H., 298 Ga.App. 536, 680 S.E.2d 569 (2009) (motion for sentence reduction); In the Interest of P.S., 295 Ga.App. 724, 673 S.E.2d 74 (2009) (motion to modify sentence); In the Interest of J.V., 282 Ga.App. 319, 638 S.E.2d 757 (2006) (motion to commute or reduce sentence).
[5] "Under OCGA § 24-1-3, the rules of evidence apply in all courts and in all trials unless otherwise expressly provided by statute." In the Interest of J.H.M., 202 Ga.App. 79, 80, 413 S.E.2d 515 (1991).