**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 14, 2018**

# In the Court of Appeals of Georgia

A17A1737, A17A1738. IN THE INTEREST OF B. G., a child (two cases).

MCFADDEN, Presiding Judge.

These related appeals arise from a dependency proceeding involving B. G., who is now 15 years old. His aunt and uncle are his legal custodians. In 2015, B. G. was removed from their custody and adjudicated dependent based on allegations that the aunt had physically abused him. In these related cases, the uncle (in Case No. A17A1737) and the aunt (in Case No. A17A1738) appeal from the juvenile court's order granting a motion for nonreunification filed by the Gwinnett County Department of Family and Children Services (DFCS). They both argue that the evidence was insufficient to support the juvenile court's ruling that reunification would be detrimental to B. G. The nonreunification order, however, does not set forth

the juvenile court's findings of facts, separate from the conclusions of law, in a manner that would permit us to make an intelligent review of the merits of the challenges to the sufficiency of the evidence. Moreover, the order contains some factual misstatements and it reflects that some of the grounds for the juvenile court's decision are legally erroneous. We therefore vacate the reunification order and remand both cases for further proceedings not inconsistent with this opinion.

1. *Inadequacy of findings of fact.*

An order entered following a hearing in a dependency proceeding "[s]hall include findings of fact[.]" OCGA § 15-11-111 (b) (2). Such findings of fact "should be made in accordance with OCGA § 9-11-52 (a)," *In the Interest of D. L. G.*, 212 Ga. App. 353 (1) (442 SE2d 11) (1994) (citations and punctuation omitted) (regarding order in deprivation proceeding under former juvenile code), which provides that a court must "find the facts specially and . . . state *separately* its conclusions of law." OCGA § 9-11-52 (a) (emphasis supplied). Thus, "the facts must be found specially; and the conclusions of law must be stated separately, regardless of whether the order otherwise is sufficient for purposes of review." *Coley v. Coley*, 169 Ga. App. 426, 428 (2) (313 SE2d 129) (1984) (citation and punctuation omitted); see *In the Interest*

2

*of D. S.*, 212 Ga. App. 203, 204 (441 SE2d 412) (1994), overruled in part on other grounds, *In the Interest of J. P.*, 267 Ga. 492, 493 (480 SE2d 8) (1997).

The juvenile court's nonreunification order does not comply with these requirements. The first 18 pages of the order amount to a recitation of what happened at the hearing on the nonreunification hearing — the juvenile court states who was present, identifies prior rulings that are incorporated into the order, describes the exhibits admitted into evidence, and then sets forth in detail the testimony of each hearing witness. The juvenile court, however, does not indicate what findings of fact he made from this hearing evidence, so these first 18 pages of the order cannot be construed as the juvenile court's findings of fact. The findings of fact "are not intended to amount to a brief of the evidence," *Coley*, 169 Ga. App. at 428 (2), and "[a] mere recitation of the events that took place at the trial does not satisfy the requirements of OCGA § 9-11-52 (a)." *In the Interest of J. B.*, 241 Ga. App. 679, 680 (1) (527 SE2d 275) (1999) (citation omitted); *In the Interest of D. L. G.*, 212 Ga. App. at 353 (1) (citation and punctuation omitted).

After the above-described recitation, the nonreunification order states a ruling in which the juvenile court, among other things, grants DFCS's nonreunification motion. The juvenile court then proceeds to describe in the order the reasoning for his

3

ruling, but in doing so he intermingles findings of fact and conclusions of law rather than stating them separately as required by OCGA § 9-11-52 (a).

The failure of the juvenile court to "find the facts specially and . . . state separately its conclusions of law," OCGA § 9-11-52 (a), prevents us, in this case, from making an intelligent review of the aunt's and uncle's challenges to the sufficiency of the hearing evidence. See generally *In the Interest of D. S.*, 212 Ga. App. at 204 ("The findings of fact required to be recited in [dependency] cases . . . enable an appellate court to more adequately and promptly review the judgment.") (citations, punctuation, and emphasis omitted). Our Supreme Court, in *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015), explained that where "the trial court has made express findings of disputed facts . . . an appellate court generally must limit its consideration of the disputed facts to those expressly found by the trial court." (citations and footnotes omitted). While *Hughes* concerned a trial court ruling on a motion to suppress, our Supreme Court has applied that decision's rationale to other types of cases involving rulings made by trial courts sitting as finders of fact, including a case involving child custody. See *Strickland v. Strickland*, 298 Ga. 630, 634 (1) n. 6 (783 SE2d 606) (2016). But because the order in this case sets out all of the evidence and then intermingles findings of facts and conclusions of law, we

4

cannot discern the scope of the juvenile court's factual findings. It is not clear from the order whether the juvenile court only found those facts contained within the court's conclusions, or whether the court's findings of fact include some or all of the facts set forth in the detailed, 18-page synopsis of the evidence.

Left uncertain on this point, we must remand. See *Hughes*, 296 Ga. at 746 (1) n. 6 ("If the trial court has made express findings of fact, but not with sufficient detail to permit meaningful appellate review, an appellate court may remand for further findings.") (citation omitted). See also *In the Interest of D. S.*, 212 Ga. App. at 205 ("We have repeatedly said that we will not cull the record to find error for an appellant; the same goes for review of an order [in a dependency proceeding,] which is required by law to contain specific findings of fact[.]"). We therefore vacate the nonreunification ruling and remand these cases with direction that the juvenile court prepare appropriate findings of fact and enter a new judgment, after which another appeal may be made. See *In the Interest of J. B.*, 241 Ga. App. at 681 (1); *In the Interest of D. L. G.*, 212 Ga. App. at 353 (1).

2. *Errors reflected in nonreunification order.*

Given our decision to vacate the nonreunification order, we do not examine the merits of the aunt's and uncle's challenges to the sufficiency of the evidence

5

supporting that order. See *In the Interest of J. B.*, 241 Ga. App. at 681 (2); *In the Interest of D. L. G.*, 212 Ga. App. at 354 (2). Nevertheless, we note that the order contains legal errors and erroneous misstatements of fact that should be corrected on remand, whether or not they would have amounted to reversible error had the order otherwise complied with OCGA § 9-11-52 (a). Compare *In the Interest of A. M.*, 306 Ga. App. 358, 364 (5) (702 SE2d 686) (2010) (nonreunification ruling must be vacated where no evidence supported one of juvenile court's findings and the "erroneous finding was sufficient to have influenced the [juvenile] court's decision to terminate reunification efforts") with *In the Interest of S. C. S.*, 336 Ga. App. 236, 246 (1) (b) (784 SE2d 83) (2016) (misstatement in finding of fact in dependency order not reversible error unless shown to be harmful). We address those errors below.

(a) *Procedural deficiencies pertaining to the uncle.*

The record reflects multiple procedural deficiencies in connection with the initial adjudication of B. G. as dependent as to the uncle. Although the state argues on appeal that the uncle has not properly preserved his arguments regarding these deficiencies, they affect the juvenile court's nonreunification order in at least two respects that we may address on appeal. First, and most fundamentally, the order

6

adjudicating B. G. dependent is void as to the uncle because the uncle was denied his due process right to counsel at the preliminary protective hearing that resulted in that order. Second, given the procedural deficiencies, the juvenile court erred in treating the uncle's purported failure to timely assert his custodial rights in B. G. as evidence supporting the nonreunification ruling.

(i) *Law and background pertaining to procedural deficiencies in this case.*

As one of B. G.'s legal custodians, the uncle was a party to the dependency proceeding, see OCGA § 15-11-2 (52) (defining "party" to include child's legal custodian), and therefore had due process rights in connection with that proceeding. As a party to a dependency proceeding, the uncle also had "the right to an attorney at all stages of the proceedings[,]" OCGA § 15-11-103 (a), and he was entitled to be "informed of his . . . right to an attorney prior to any hearing." OCGA § 15-11-103 (g). He also had "the right to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses, to examine pertinent court files and records, and to appeal the orders of the court." OCGA § 15-11-19 (a). The juvenile court was required to advise the uncle of these rights at the uncle's first appearance before the court. OCGA § 15-11-19 (b).

The order adjudicating B. G. dependent arose from a preliminary protective hearing that occurred on June 11, 2015. (The order was issued February 16, 2016, nunc pro tunc to June 11, 2015.) The uncle was entitled to notice of that hearing, OCGA § 15-11-145 (b), and he was entitled to participate in it. OCGA § 15-11-145 (d) (1). The juvenile court was required to inform the uncle of these rights at the start of that hearing. OCGA § 15-11-145 (f) (3).

The record does not reflect that the uncle's rights at the June 11 preliminary protective hearing were satisfied, or even acknowledged. The hearing arose from a complaint that did not name the uncle as a legal custodian. Nothing in the record indicates that the uncle received notice of the hearing or was informed of his right to an attorney prior to that hearing. The uncle was not present at the hearing, nor were his interests as B. G.'s legal custodian represented at the hearing. No evidence pertaining to the uncle was presented at the June 11 hearing, no mention was made of him or his ability to care for B. G., and no acknowledgment was made of the uncle's status as a legal custodian. Instead, at the hearing, the aunt stipulated that B.

G. was dependent[1] "due to the fact that [the aunt was] arrested," and she waived the filing of a dependency petition.

Consequently, no dependency petition naming the uncle was ever filed or served,[2] and no subsequent dependency adjudication hearing occurred. Instead, eight months after this preliminary hearing and *after* DFCS filed its motion for nonreunification, the juvenile court filed the order adjudicating B. G. dependent in the first instance. Nevertheless, in the order on appeal granting the nonreunification motion, the juvenile court chastised the uncle for not timely asserting his custodial rights to B. G. and cited this failure as a ground for granting nonreunification.

(ii) *The order adjudicating B. G. dependent is void as to the uncle, so the juvenile court erred in relying on it to grant nonreunification as to the uncle.*

"[O]ur courts have recognized that the denial of a due process right in certain juvenile actions may result in a void judgment." *In the Interest of C. H.*, 343 Ga. App.

---

[1] The juvenile court, in reciting the stipulation to the aunt at the hearing, used the term "deprived."

[2] At our request, the parties provided supplemental briefs on whether the lack of a dependency petition affected the juvenile court's subject matter jurisdiction. Having reviewed those briefs, we agree with the appellee that the juvenile court had subject matter jurisdiction over the dependency proceeding pursuant to § 15-11-10 (1) (C), which proceeding was initiated when DFCS filed the complaint alleging that B. G. was dependent. See Uniform Juvenile Court Rule 4.1 (a).

1, 9 (1) (a) (805 SE2d 637) (2017) (citation omitted). Although the complaint that initiated this dependency proceeding did not name the uncle, as B. G.'s legal custodian the uncle was entitled to receive notice of and be present at the preliminary protective hearing, and to be informed before that hearing of his right to an attorney. "In failing to ensure that [the uncle was] aware of and either exercised or waived [his] right to counsel, the juvenile court violated a due process right of [the uncle], and [the June 11, 2015] order[ is] void as a result." *In the Interest of C. H.*, supra at 12 (1) (c). (footnote omitted).

The state argues that the uncle waived his right to assert claims of due process violations because the uncle did not appeal from the order adjudicating B. G. dependent or otherwise assert these claims below. But "a party may challenge the propriety of an earlier, unappealed [dependency] order in the course of a timely direct appeal taken pursuant to OCGA § 5-6-34 (a) (1) from a subsequent order *arising out of the [dependency] proceeding*," *In the Interest of I. S.*, 278 Ga. 859, 860 (607 SE2d 546) (2005) (citation omitted; emphasis supplied),[3] and the order granting the motion for nonreunification is an order arising out of the dependency proceeding. See OCGA

_____

[3] In contrast, a party is bound by an unappealed dependency order in another proceeding, such as a parental rights termination proceeding. *In the Interest of I. S.*, 278 Ga. at 861, n. 6.

§§ 15-11-200 et seq. (provisions pertaining to family reunification determinations, which are part of article of juvenile code governing dependency proceedings). Moreover, we can consider whether the order is void, regardless of what happened below, because "[t]he judgment of a court . . . which is void for any . . . cause is a mere nullity and *may be so held in any court* when it becomes material to the interest of the parties to consider it." OCGA § 9-12-16 (emphasis supplied). See *Buckhorn Ventures, LLC v. Forsyth County*, 262 Ga. App. 299, 302 (1) (585 SE2d 229) (2003) (permitting appellate court to, "of its own motion," reverse judgment that it discovers from the appellate record to be void). In his appeal from the reunification order, the uncle has enumerated as error the sufficiency of the evidence supporting that ruling, which evidence included the findings of facts and conclusions of law contained in the June 11, 2015 order (including the aunt's stipulation of B. G.'s dependency), which the juvenile court incorporated into the nonreunification order. Because the June 11, 2015 order was void as to the uncle, to the extent the juvenile court considered the findings and conclusions in that order to rule on the issue of nonreunification as to the uncle, the juvenile court erred.

11

(iii) *The juvenile court erred in citing the uncle's supposedly untimely assertion of custodial rights as a ground for granting nonreunification, in light of the multiple procedural deficiencies as to the uncle.*

In granting the nonreunification motion, the juvenile court stated that the uncle had

> unjustifiably failed to assert any custodial rights over the child, failed to meaningfully participate in the child's dependency proceeding despite being present at most of the proceedings, and failed to make any effort toward reunification with the child or his siblings until he was served with [DFCS's] Motion for Nonreunification, more than six months after the child's removal into foster care.

But it appears from the record that the January 5, 2016 motion for nonreunification was the first pleading in this dependency proceeding that expressly named the uncle as B. G.'s legal custodian (and therefore a party to the dependency proceeding). Before that time there was no pleading filed in the proceeding that set forth the nature of the uncle's alleged failures pertaining to B. G. and would have enabled him to prepare a response. See generally *Watkins v. Watkins*, 266 Ga. 269, 270-271 (1) (466 SE2d 860) (1996) (procedural requirements relating to deprivation petitions — now dependency petitions — serve to provide party with notice of the facts allegedly

12

demonstrating deprivation against which the party will have to defend). Cf. *In the Interest of D. R. C.*, 191 Ga. App. 278 (1) (381 SE2d 426) (1989) (where parental rights termination petition failed to set forth adequate facts demonstrating nature of appellant mother's failure to provide proper care or control, appellant lacked sufficient information to enable her to prepare her defense to petition). As discussed above, the complaint that initiated B. G.'s removal from his home named only the aunt as the boy's legal custodian, and DFCS never filed a dependency petition in this case. Although the aunt waived the filing of a dependency petition, the uncle did not; neither he nor anyone representing him was present at the preliminary protective hearing where this waiver occurred. And although the uncle did attend many interim hearings, the transcripts of those hearings (and the written orders following those hearings) show that, although he was B. G.'s legal custodian, the uncle was not treated as a party to the proceedings. The juvenile court never explained to the uncle any of his rights as B. G.'s legal custodian, as required by the statutes cited above.

It is true that the uncle did not challenge below the juvenile court's failure to explain to him or acknowledge his rights under the juvenile code. And we recognize that certain procedural requirements of the juvenile code, while mandatory, may be waived. See *Sanchez v. Walker County Dept. of Family & Children Svcs.*, 237 Ga.

13

406, 408 (229 SE2d 66) (1976); *In the Interest of C. S.*, 236 Ga. App. 312, 315 (2) (511 SE2d 895) (1999). Nevertheless, the juvenile code expressly states that, in every proceeding, it "seeks to guarantee due process of law, as required by the Constitutions of the United States and the State of Georgia, through which every child and his or her parent and all other interested parties are assured fair hearings at which legal rights are recognized and enforced." OCGA § 15-11-1. And it is our duty, as an appellate court, "to enforce the statutory procedures established by the General Assembly." *Sanchez*, supra at 411. Even if the uncle has waived his right to enumerate the statutory procedural deficiencies as independent grounds for reversing the nonreunification order, he can and has challenged the sufficiency of the evidence supporting that order, and the juvenile court treated the uncle's purported failure to assert his custodial rights as evidence.

We cannot condone this treatment. To penalize the uncle for his purported failure to assert his custodial rights, when the juvenile court failed to comply with mandatory statutory requirements to explain to the uncle his rights in the proceeding, runs afoul of the stated goal of the juvenile code. To the extent the juvenile court relied on this purported failure of the uncle as a ground for denying reunification as to him, the juvenile court erred.

14

(b) *Application of statutory presumption that reunification is detrimental.*

In the nonreunification order, the juvenile court applied the legal presumption set forth in OCGA § 15-11-204 (d) (1), on the ground that the aunt and uncle failed to comply with a previously-ordered case plan for B. G.'s sibling, A. G. That Code section pertinently provides that, while DFCS has the burden of demonstrating by clear and convincing evidence that a reunification plan is not appropriate,

> [t]here shall be a presumption that reunification is detrimental to a child adjudicated as a dependent child and reunification services should not be provided if the court finds by clear and convincing evidence that . . . [s]uch child's *parent* has unjustifiably failed to comply with a previously ordered plan designed to reunite the family[.]

OCGA § 15-11-204 (d) (1) (emphasis supplied).

Pretermitting whether this presumption applies when the previously-ordered plan concerned a different dependent child, by its terms the presumption does not apply to this case because neither the aunt nor the uncle is the *parent* of B. G. Instead, they are B. G.'s legal custodians. The terms "parent" and "legal custodian" are not interchangeable in our juvenile code. The juvenile code defines "parent" as "either the legal father or the legal mother of a child," OCGA § 15-11-2 (51), and its definition of "legal father" (OCGA § 15-11-2 (43)) and "legal mother" (OCGA § 15-

15

11-2 (44)) do not encompass the uncle and aunt. The juvenile code defines "legal custodian," pertinently, as "[a] person to whom legal custody of a child has been given by order of a court[.]" OCGA § 15-11-2 (42) (A). Moreover, at other places in the juvenile code, including another subsection of OCGA § 15-11-204, the Code specifically states that it applies to a child's "parent, guardian, or legal custodian." See OCGA § 15-11-204 (b); see also, e.g., OCGA § 15-11-2 (9) (stating that "case plan" may include services for a child's "parent, guardian, or legal custodian"); OCGA § 15-11-2 (22) (C) (defining "dependent child" to include a chid who "[i]s without his or her parent, guardian, or legal custodian"); OCGA § 15-11-101 (e) (permitting court to order certain examinations of child's "parent, guardian, or legal custodian"); OCGA § 15-11-107 (d) (pertaining to dependency of child whose "parent, guardian, or legal custodian inhibits or interferes with the provision of medical treatment"); OCGA § 15-11-130 (b) (requiring DFCS to endeavor to place child within its temporary care and supervision with a relative of the child's "parent, guardian, or legal custodian," among other possibilities, and giving DFCS the same rights and powers with regard to the child as his or her "parent, guardian, or legal custodian").

16

"Georgia law provides that the express mention of one thing in an act or statute [— here, 'parent' —] implies the exclusion of all other things[, such as a 'legal custodian']." *Chase v. State*, 285 Ga. 693, 695 (2) (681 SE2d 116) (2009) (citation omitted). Affording the text of OCGA § 15-11-204 (d) (1) its plain and ordinary meaning, viewing it in the context in which it appears, and reading it in its most natural and reasonable way, see *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013), we construe the presumption set forth therein not to apply to the circumstance of the failure of a child's legal custodian to comply with a previously-ordered plan to reunite the family.[4] Cf. *In the Interest of J. B.*, 274 Ga. App. 20, 24-25 (1) (619 SE2d 305) (2005) (pretermitting the issue of the application of presumption where legal custodian failed to comply with previously ordered plan because, although case did not "fit neatly into any of the [statutory] factors [set forth in predecessor to OCGA § 15-11-204] so as to provide a presumption that nonreunification is appropriate," such failure nevertheless could be considered by juvenile court as evidence supporting nonreunification). Consequently, the juvenile

---

[4] While the reason for limiting the application of the presumption contained in OCGA § 15-11-204 (d) (1) to parents is not readily apparent to us, that is a policy question for the legislature.

17

court erred in applying the presumption set forth in OCGA § 15-11-204 (d) (1) in this case.

(c) *Timing of the aunt and uncle's reunification case plan.*

In the nonreunification order, the juvenile court stated that the aunt and uncle had failed "to affirmatively pursue a reunification case plan until after [DFCS] advised of its intent to seek nonreunification," which occurred in November, 2015. But the record indicates that no case plan for reunifying B. G. with his aunt and uncle existed until May 2016.

A case plan must include the specific information set forth in OCGA § 15-11-201 (b). The only written case plans for B. G. in the record that contain this information are an unfiled case plan dated May 6, 2016 and another case plan dated May 10, 2016 and filed May 12, 2016. Nothing in the record shows that DFCS provided the aunt and uncle with any written case plan that contained the statutorily-required information at any time before May 2016. While the juvenile court, in the reunification order, described a one-page order entered February 29, 2016, nunc pro tunc January 22, 2016, as "outlining a court-approved reunification case plan" for the aunt and uncle and enumerating general case plan goals, the order does not contain the details required in OCGA § 15-11-201 (b) for a case plan. The February 29 order

18

suggests that the parties discussed a case plan at a January 22 hearing, but the record contains no transcript of that hearing.

The juvenile court held the first hearing on the motion for nonreunification on May 13, 2016, the day after DFCS filed the May 10 case plan with the juvenile court, and the juvenile court issued his nonreunification order on August 16, 2016, nunc pro tunc June 2, 2016, even though the May 10 case plan gave the aunt and uncle until September 30, 2016 to complete several reunification goals. See generally *In the Interest of B. C.*, 250 Ga. App. 152, 155-156 (1) (550 SE2d 707) (2001) (statutory mandate that reasonable efforts shall be made to preserve and reunify families — found in the former juvenile code at OCGA § 15-11-58 (a) (2) and in the current juvenile code at OCGA § 15-11-202 (a) — required juvenile court to give mother opportunity to meet case plan goals). Given this timing, the record provides no support for a finding that the aunt and uncle failed to comply with the goals of a case plan for reunification with B. G., and to the extent the juvenile court based his ruling on such a failure, the court erred.

(d) *References to stipulations not made by the aunt and/or uncle as stipulations by the "parties."*

19

At points in the nonreunification order, and in the prior orders that the juvenile court incorporated into the nonreunification order, the juvenile court stated that the "parties" had made certain stipulations. To the extent the juvenile court intended to include the aunt and uncle in his references to the "parties," the record demonstrates that such references are too broad. Although the appellee asserts in its appellate briefs that the uncle "stipulated that the child was dependent on June 11, 2015," the transcript of the June 11, 2015 dependency hearing shows that the uncle was not present and did not make any stipulation. And although an attorney for DFCS represented at the subsequent August 7, 2015 disposition hearing that "the parties" reached a stipulation that reunification of B. G.'s siblings with their mother was in those children's best interest, the transcript of that hearing does not reflect the specific terms of a stipulation as to B. G. To the extent the juvenile court attributed to the uncle a stipulation of dependency or attributed to the aunt and uncle a stipulation about B. G.'s best interest, and based the nonreunification ruling on these attributed stipulations, the juvenile court erred.

*Judgments vacated and cases remanded with direction. Bethel, J., concurs fully in Division 1, specially in Division 2, and in the judgment.  Branch, J., concurs fully in Division 1 and in the judgment only as to Division 2.\**

20

**\*DIVISION 2 OF THIS OPINION IS PHYSICAL PRECEDENT ONLY.**

**COURT OF APPEALS RULE 33.2.**

A17A1737, A17A1738. IN THE INTEREST OF B.G., a child.

BETHEL, Judge, concurring fully in part, specially in part, and in the judgment.

I concur fully in Division 1. Accordingly, I concur in the judgment. While I suspect there is much in Division 2 that will be of use to the juvenile court on remand, I do not agree with all that is said therein and do not find it to be essential to resolution of the case. Accordingly, I concur specially with Division 2.