691 S.E.2d 396 (2010)
In the Interest of J.N. et al., children.
No. A09A1966.
Court of Appeals of Georgia.
March 5, 2010.
*397 Kessler, Schwarz & Solomiany, Dennis G. Collard, for Appellant.
John S. Husser, Rome, for Appellee.
ANDREWS, Presiding Judge.
In deprivation proceedings brought by the Department of Family and Children Services (DFACS), the Haralson County Juvenile Court found that J.N. (born August 27, 2005) and A.N. (born March 2, 2004) were deprived children without proper care as a result of parental use of methamphetamine. The court removed the children from the parents' custody shortly after J.N.'s birth, and approved a case plan pursuant to OCGA § 15-11-58 for reunification of the children with the parents. Based on a subsequent finding that the parents refused to comply with the court-ordered reunification plan, the court entered an order on August 14, 2007, granting DFACS' motions pursuant to OCGA § 15-11-58(h) and (i) to terminate reunification services and to enter an order placing the deprived children in the custody of relatives until the children's eighteenth birthdays.[1] On April 17, 2008, Paul Neese, the children's biological father, filed a petition pursuant to OCGA § 15-11-40(b) seeking modification of the August 14, 2007 order terminating reunification services and placing the children in the custody of relatives.[2] The petition alleged that changed circumstancesevidence that Neese had stopped abusing unlawful substances and participated in parenting instructionrequired in the best interest of the children that the order be modified by immediately transferring the children to his custody, or by ordering that he have regular visitation as part of a new plan to reunify him with the children. Neese filed the present direct appeal from the juvenile court's order denying his modification petition.
1. We first address the jurisdictional basis for this direct appeal. Under OCGA § 5-6-34(a)(11) the right to a direct appeal is established from "[a]ll judgments or orders *398 in child custody cases including, but not limited to, awarding or refusing to change child custody or holding or declining to hold persons in contempt of such child custody judgment or orders." (Emphasis supplied.) Subsection (a)(11) is effective for "all child custody proceedings and modifications of child custody filed on or after January 1, 2008." Ga. L. 2007, 554, 569, § 8. Although Neese's motion sought modification of the juvenile court's custody order and was filed on April 17, 2008, we conclude that OCGA § 5-6-34(a)(11) did not give Neese the right to a direct appeal from the order entered in these child deprivation proceedings.
The right in OCGA § 5-6-34(a)(11) to a direct appeal from orders or judgments in "child custody cases" plainly includes "child custody proceedings" as set forth in Chapter 9 of Title 19 (Domestic Relations) of the Official Code of Georgia Annotated, where the custody of a child is directly at issue between the parents. It is unclear, however, whether the broad phrase "child custody cases" in subsection (a)(11) encompasses child deprivation proceedings in which the juvenile court enters a child custody order. See OCGA §§ 15-11-54 through 15-11-58.1. In construing OCGA § 5-6-34(a)(11) to determine which cases the legislature intended to include within the meaning of "child custody cases," we presume that the statute was enacted with full knowledge of and with reference to existing statutory and case law, and we construe the statute in harmony with the existing law. Higdon v. City of Senoia, 273 Ga. 83, 86, 538 S.E.2d 39 (2000); Plantation Pipe Line Co. v. City of Bremen, 227 Ga. 1, 9, 178 S.E.2d 868 (1970). Child deprivation proceedings are brought on behalf of the child, focus on the needs of the child, and may include custody orders "best suited to the protection and physical, mental, and moral welfare of the child." OCGA § 15-11-55(a); In the Interest of J.P., 267 Ga. 492, 480 S.E.2d 8 (1997). Although child custody determinations may be necessary in a deprivation proceeding, "the proceeding itself is to determine whether the child is deprived and is not an action brought to decide custody matters." Id. at 492, 480 S.E.2d 8; In the Interest of I.S., 278 Ga. at 861, 607 S.E.2d 546 ("[I]ssues of deprivation and custody are separate and distinct."); see In re M.C.J., 271 Ga. 546, 523 S.E.2d 6 (1999) (contrasting child custody proceedings between parents with child deprivation proceedings). In accordance with these distinctions, we find that "child custody cases" within the meaning of OCGA § 5-6-34(a)(11) does not include child deprivation proceedings in which a custody order was entered. This construction is consistent with the fact that the introductory paragraph of the General Assembly Act by which OCGA § 5-6-34(a)(11) was enacted to establish the right to direct appeals in "child custody cases" states that it was intended "to provide for direct appeals in certain domestic relations cases." Ga. L. 2007, p. 554. Child deprivation proceedings are not included within "domestic relations" cases under Title 19 of the Georgia Code.
Although OCGA § 5-6-34(a)(11) did not authorize a direct appeal in this case, we find that the juvenile court's order denying the OCGA § 15-11-40(b) petition seeking modification based on changed circumstances in the best interest of the children was a final judgment directly appealable under OCGA §§ 5-6-34(a)(1) and 15-11-3. In Rossi v. Price, 237 Ga. 651, 229 S.E.2d 429 (1976), the Supreme Court considered the juvenile court's denial of a petition brought under OCGA § 15-11-40 (former Code Ann. § 24A-2801) in a case where a juvenile adjudicated delinquent was committed to the custody of the Department of Juvenile Justice (formerly the Division of Children & Youth). The petition sought pursuant to OCGA § 15-11-40(a) to vacate the commitment order on the basis of fraud and newly-discovered evidence. Id. At issue was whether the superior court correctly denied the juvenile's subsequent petition for mandamus seeking to compel the juvenile court to hold a hearing on the OCGA § 15-11-40 petition. Id. at 651-652, 229 S.E.2d 429. The Supreme Court affirmed the superior court's denial of the petition for mandamus on the basis that
the [juvenile court's] order denying the [OCGA § 15-11-40] petition to vacate the order committing the juvenile was a judicial order, subject to judicial review as *399 provided by Code Ann. § 24A-3801 [currently codified at OCGA § 15-11-3] (Ga. L. 1971, pp. 709, 755). Where there is a right of judicial review of the act of a judicial officer, mandamus is not an available remedy to require him to perform his judicial function in a manner different from the way he has performed it.
Id. at 652, 229 S.E.2d 429. Thus Rossi found that the juvenile court's denial of the petition brought pursuant to OCGA § 15-11-40 was subject to appeal under OCGA § 15-11-3, which provides that "[i]n all cases of final judgments of a juvenile court judge, appeals shall be taken to the Court of Appeals or the Supreme Court in the same manner as appeals from the superior court." Under OCGA § 5-6-34(a)(1), appeals from a superior court judgment to the Supreme Court or the Court of Appeals are by direct appeal from "[a]ll final judgments, that is to say, where the case is no longer pending in the court below, except as provided in Code Section 5-6-35 [setting forth cases requiring an application for appeal]." See Fulton County Dept. of Family, etc., Svcs. v. Perkins, 244 Ga. 237, 238, 259 S.E.2d 427 (1978) (equating "final orders" within the meaning of OCGA §§ 15-11-3 and 5-6-34(a)(1)). It is clear that the juvenile court order in the present deprivation proceeding placing the children in the long-term custody of relatives was considered a final order from which Neese could have taken a direct appeal pursuant to OCGA §§ 15-11-3 and 5-6-34(a)(1). In the Interest of I.S., 278 Ga. at 859, 607 S.E.2d 546; In the Interest of J.P., 267 Ga. at 492, 480 S.E.2d 8; Sanchez v. Walker County Dept. of Family, etc., Svcs., 235 Ga. 817, 221 S.E.2d 589 (1976). We conclude that the order denying Neese's OCGA § 15-11-40(b) petition to modify the final order in the deprivation proceeding was itself a final order from which Neese had the right to a direct appeal. See Rossi, 237 Ga. at 651, 229 S.E.2d 429.
To the extent our decision in In the Interest of B.S.H., 236 Ga.App. 879, 514 S.E.2d 70 (1999), holds otherwise, it is overruled. There we broadly stated, without explanation, that "[n]o subsection of OCGA § 5-6-34(a) authorizes direct appeal of a § 15-11-42 [redesignated as OCGA § 15-11-40] motion and therefore appeal may only be had by application." Id. at 882, 514 S.E.2d 70. As set forth above, the order denying Neese's petition under OCGA § 15-11-40(b) was a final judgment subject to direct appeal under OCGA § 5-6-34(a)(1). Moreover, nothing in OCGA § 5-6-35 (requiring applications for appeal in certain cases) applied to Neese's petition brought pursuant to OCGA § 15-11-40(b).
2. Neese contends that the juvenile court applied an incorrect standard of proof on his petition under OCGA § 15-11-40(b) to modify the court's prior order entered pursuant to OCGA § 15-11-58(h) and (i).
Prior to the petition to modify, the juvenile court entered orders finding that the children were deprived (as a result of methamphetamine use by both parents), removing the children from parental custody, and approving a DFACS plan for parental reunification with the children. OCGA §§ 15-11-54; 15-11-55; 15-11-58. In response to DFACS' motions, the court subsequently entered an order on August 14, 2007, pursuant to OCGA § 15-11-58(h) and (i) finding that, because the parents failed to comply with the reunification plan, reunification was inappropriate, and (without referral for termination of parental rights) placing each child in the long-term custody of a maternal aunt until each child's eighteenth birthday. Neese did not appeal from any of the court's orders.[3] Subsections (h) and (i) of OCGA § 15-11-58 provide as follows:
(h) When reviewing the determination by [DFACS] that a reunification plan is not appropriate, the court shall determine by clear and convincing evidence whether reasonable efforts to reunify a child with his or her family will be detrimental to the child and that reunification services, therefore, should not be provided or should be terminated. There shall be a presumption that reunification services should not be provided if the court finds by clear and convincing evidence that ... [t]he parent *400 has unjustifiably failed to comply with a previously ordered plan designed to reunite the family....
(i)(1) If the court has entered an order finding that reasonable efforts to reunify a child with his or her family would be detrimental to the child in accordance with subsection (h) of this Code section and if the court finds that referral for termination of parental rights and adoption is not in the best interest of the child, the court may, upon proper petition, enter a custody order which shall remain in effect until the child's eighteenth birthday: (A) Placing the child in the custody of a relative of the child if such a person is willing and, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child.... Such order may be modified following a petition for modification by a party or upon motion of the court pursuant to Code Section 15-11-40.
Neese's petition to modify the August 14, 2007 order was brought pursuant to OCGA § 15-11-40(b), which provides that an order of the juvenile court may be modified "on the ground that changed circumstances so require in the best interest of the child." Subsection (c) of the statute provides that "[a]ny party to the proceeding, the probation officer, or any other person having supervision or legal custody of or an interest in the child may petition the court for the relief provided in this Code section," and subsection (d) provides that, after a hearing on the petition, "the court shall deny or grant relief as the evidence warrants." OCGA § 15-11-40(c) and (d). Nothing in OCGA § 15-11-40 sets forth an evidentiary standard of proof for consideration of a petition.
In considering Neese's OCGA § 15-11-40(b) petition to modify the prior order, the juvenile court found that Neese had the burden to prove by the standard of "clear and convincing evidence" that changed circumstances required in the best interest of the children that the court modify its custody order. Although we agree that Neese had the burden of proof on his modification petition, we find that he was not required to carry this burden by "clear and convincing evidence." As used in deprivation proceedings, the "clear and convincing evidence" standarda level of proof greater than a preponderance of the evidence, but less than beyond a reasonable doubt
safeguards the high value society places on the integrity of the family unit and helps eliminate the risk that a factfinder might base his determination on a few isolated instances of unusual conduct or idiosyncratic behavior. Only under compelling circumstances found to exist by clear and convincing proof may a court sever the parent-child custodial relationship.
(Citations and punctuation omitted.) In the Interest of T.L., 269 Ga.App. 842, 843, 605 S.E.2d 432 (2004) (punctuation and citations omitted); In the Interest of A.V.B., 267 Ga. 728, 729, 482 S.E.2d 275 (1997); In re Suggs, 249 Ga. 365-366, 291 S.E.2d 233 (1982). Neese's children were placed in DFACS custody based on clear and convincing evidence of deprivation (OCGA § 15-11-54), and a plan to reunify the children with Neese was adopted by the court under OCGA § 15-11-58. The same higher standard of clear and convincing proof was required under OCGA § 15-11-58(h) and (i) to support the subsequent juvenile court determination that, because Neese failed to comply with the reunification plan, reunification efforts would be detrimental to the children and should be terminated. Without referring the case for termination of parental rights, the juvenile court entered a custody order pursuant to OCGA § 15-11-58(i)(1) placing the children in the long-term custody of their maternal aunts, subject to periodic review under OCGA § 15-11-58(i)(2). Despite court orders finding that the children were deprived and that reunification efforts were not appropriate, OCGA § 15-11-58(i)(1) specifically recognized that Neese retained an interest in the children sufficient to support a right to petition for modification of the custody order pursuant to OCGA § 15-11-40(b) by proving that "changed circumstances so require in the best interest of the child[ren]." See OCGA 15-11-13; In re M.A.F., 254 Ga. 748, 751, n. 6, 334 S.E.2d 668 (1985); In the Interest of K.B., 188 Ga.App. 199, 372 S.E.2d 476 (1988).
*401 At issue is what standard of proof applied under these circumstances to Neese's petition under OCGA § 15-11-40(b) to modify the custody order.
The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.... [I]n any given proceeding, the minimum standard of proof tolerated by the due process requirement reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants.
(Citations and punctuation omitted.) Santosky v. Kramer, 455 U.S. 745, 754-755, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Requiring the state to prove a child deprivation claim under OCGA § 15-11-54 by the elevated standard of "clear and convincing evidence" accords with due process by focusing on the fundamental liberty interest that a parent has in the care and custody of his or her child, shifting the risk of error toward the state, and reducing the risk of an erroneous decision impairing that interest. Id. at 758-761, 102 S.Ct. 1388. By contrast, after the juvenile court found by clear and convincing evidence that Neese's children were deprived, that he was unfit to retain custody, and that efforts to reunify him with the children were not appropriate, Neese's interest in the children was substantially reduced, and the focus shifted to the children's now adverse interest in a secure and stable home, and the state's interest in the welfare of the children. In the Interest of J.C., 242 Ga. 737, 738, 251 S.E.2d 299 (1978); Santosky, 455 U.S. at 760, 767, n. 17, 102 S.Ct. 1388; OCGA § 15-11-94(a). Considering these interests in Neese's petition to modify the custody order under OCGA § 15-11-40(b), we find that due process is satisfied by placing the burden of proof on Neese under a "preponderance of the evidence" standard by which the risk of error in the proceeding is shared among the interests in "roughly equal fashion." Santosky, 455 U.S. at 755, 102 S.Ct. 1388; see In re Marilyn H., 5 Cal.4th 295, 19 Cal.Rptr.2d 544, 851 P.2d 826 (1993). Accordingly, Neese had the burden to prove by a preponderance of the evidence that changed circumstances required in the best interest of the children that the requested modification be granted. OCGA § 15-11-40(b). Because the juvenile court applied an incorrect standard of proof, we reverse and remand the case for findings applying the correct standard. In the Interest of A.S., 293 Ga.App. 710, 714, 667 S.E.2d 701 (2008).
3. Contrary to Neese's contention, the parent-third party custody statute set forth in OCGA § 19-7-1(b.1) was not applicable to his petition to modify the juvenile court's order placing custody of his deprived children in the maternal aunts. The statute "establishes a rebuttable presumption that parental custody is always in the child's best interest, thus favoring the biological parent over the third party," but it is based on the implicit presumption that "the parent is a fit person entitled to custody." Clark v. Wade, 273 Ga. 587, 590, 593, 544 S.E.2d 99 (2001); Burke v. King, 254 Ga.App. 351, 352, 562 S.E.2d 271 (2002). Neese's petition to modify the custody order was brought after the juvenile court found his children were deprived, that he was unfit to retain custody, and that reunification efforts were not appropriate.
4. We decline to address evidentiary issues raised by Neese prior to remand and application of the correct standard of proof.
Judgment reversed and case remanded.
MILLER, C.J., JOHNSON, P.J., BLACKBURN, P.J., SMITH, P.J., BARNES, ELLINGTON, PHIPPS, MIKELL, ADAMS, BERNES, and DOYLE, JJ., concur.
NOTES
[1] DFACS did not seek termination of parental rights. See OCGA § 15-11-58(i).
[2] This was a final order in the deprivation proceedings directly appealable pursuant to OCGA § 5-6-34(a)(1). In the Interest of I.S., 278 Ga. 859, 607 S.E.2d 546 (2005). Although Neese filed a direct appeal from the August 14, 2007 order, he withdrew the appeal. Nevertheless, OCGA § 15-11-58(i)(1) specifically provided that Neese had the right to petition pursuant to OCGA § 15-11-40 for modification of the court's order. There is no time limit under OCGA § 15-11-40 for filing a petition for modification of a juvenile court order. "[S]o long as a juvenile court order is in effect and the court has not otherwise relinquished jurisdiction of the matter, a motion under OCGA § 15-11-[40] is timely." In the Interest of B.S.H., 236 Ga.App. 879, 882, 514 S.E.2d 70 (1999) (construing former OCGA § 15-11-42, redesignated as OCGA § 15-11-40).
[3] The children's mother did not contest or appeal from the court's orders and did not participate with the father in the present petition for modification.