**THIRD DIVISION
DOYLE, P. J.,
REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**April 18, 2022**

# In the Court of Appeals of Georgia

A22A0515. IN THE INTEREST OF S. W., a child.

PHIPPS, Senior Appellate Judge.

The mother of eight-year-old S. W. appeals the juvenile court's temporary order addressing visitation in this dependency case. For the following reasons, we vacate that order, as well as a previous custody order entered by the juvenile court, and remand the case to the juvenile court with direction.

The record shows that the Columbia County Department of Family & Children Services ("DFCS") received a report on May 1, 2019, regarding the death of S. W.'s two-year-old sibling. At that time, DFCS took S. W., who was then five years old, into custody and placed her with her father. DFCS also filed a complaint seeking to place primary sole custody of the child with her father. A 72-hour hearing was held, and all parties agreed that S. W. was dependent. DFCS subsequently filed a

dependency/deprivation[1] petition claiming that S. W. was "deprived" due to allegations of inadequate supervision and "unexplained child injuries." At the 10-day hearing, the parties again agreed that S. W. was dependent.

On June 7, 2019, the juvenile court issued both a preliminary protective order and an order of adjudication and temporary disposition. In the preliminary protective order, the court found that (a) S. W. "ha[d] been abused or neglected[,]" (b) she was "in need of the protection of the Court," and (c) continuation in the present custody situation was in her best interest. In its order of adjudication and temporary disposition, the court found, by clear and convincing evidence, that S. W. was dependent and that "return to the [mother's] home [was] contrary to the welfare of the child." In both orders, the court noted that continued placement outside of the

[1] "The Juvenile Code was substantially revised in 2013. Importantly, the former Juvenile Code authorized a juvenile court to award custody to [DFCS] of any minor child shown to be 'deprived.' But the current Juvenile Code uses the word 'dependent' in lieu of 'deprived.'" *In the Interest of L. K.*, 353 Ga. App. 855, 857, n. 4 (840 SE2d 76) (2020) (citations and punctuation omitted). Here, DFCS filed its initial complaint in 2019, so the new Juvenile Code applies. Id. For reasons that are unclear on the current record, the May 2019 petition filed by DFCS is labeled "Deprivation," rather than "Dependency," and alleges that the child is "deprived," rather than "dependent." Nonetheless, given the similarities between the definition of a 'deprived child' and that of a 'dependent child,' the language used in the petition filed by DFCS in this case is immaterial, and "our previous decisions addressing the deprivation of a child are relevant to appeals involving the dependency of a child." Id. (citation and punctuation omitted).

mother's home was necessary "*to ensure the safety of the child due to the death of the child's sibling and the open investigation by law enforcement surrounding the circumstances and violent death of the child's sibling.*" The protective order further noted that the mother was to have no visitation or contact with S. W.

The father filed a motion to intervene, which was granted by the juvenile court. On June 20, 2019, the father filed, in the juvenile court action, a document entitled "Complaint for Change of Custody." The filing requested that sole legal custody of S. W. be changed from DFCS to the father, noting that the father shared physical and legal custody with the mother and a change in circumstances materially affected the welfare of S. W. On June 21, 2019, the juvenile court held a disposition hearing during which the DFCS caseworker updated the court on the case. The court also heard argument on the father's request for change of custody. Following the hearing, the juvenile court entered a July 9, 2019 temporary order (a) awarding the father sole temporary custody of S. W. until further order of the court, (b) relieving DFCS of legal custody, (c) restraining the mother from communication and/or contact with S. W., (d) allowing the maternal grandparents supervised visitation with S. W., (e) noting that child support was not ordered, and (f) indicating that a guardian ad litem was being appointed to represent S. W.'s best interests (the "July 2019 temporary

3

order"). The order did not include any findings of fact or conclusions of law supporting the juvenile court's decisions. The court subsequently held a status hearing[2] and, on September 30, 2019, issued an order essentially continuing its previous order.

Following a number of counsel substitutions and a request for continuance by the mother, the juvenile court held what is labeled as a "Final Hearing" on the front page of the September 8, 2020 hearing transcript. The record does not show that a final order of disposition has been entered; however, on April 5, 2021, the juvenile court issued a temporary order permitting the mother to have supervised telephone visitation with S. W. (the "April 2021 temporary order"). The order indicates that visitation "shall be conducted once a week for a period of thirty (30) minutes in duration" and that "[s]aid time will be at the discretion of the custodian." The mother filed a notice of appeal on May 5, 2021, purporting to appeal from "all judgments, rulings, orders, and decisions in this action that are adverse to [her], including, but not limited to, the Court's April 5, 2021 Temporary Order."[3]

---

[2] The transcript of that hearing is not included in the record on appeal.

[3] The mother's appellate brief challenges only the juvenile court's July 2019 and April 2021 temporary orders. We therefore limit our review to those two orders.

1. Before addressing the merits of the mother's enumerations of error, we must determine whether this Court has jurisdiction to consider the mother's direct appeal. See *Parham v. Stewart*, 308 Ga. 170, 171 (1) (839 SE2d 605) (2020) (an appellate court has a duty to raise the question of its jurisdiction in all cases where there may be any doubt about its existence).

This Court has held that custody orders entered by juvenile courts in dependency proceedings are directly appealable. See *In the Interest of J. N.*, 302 Ga. App. 631, 631, 633-634 (1) (691 SE2d 396) (2010) (denial of petition to modify order terminating reunification services and placing children in the custody of relatives was subject to direct appeal as a final judgment under OCGA § 5-6-34 (a) (1)). This includes temporary or interlocutory custody orders issued in dependency proceedings. See *In the Interest of S. J.*, 270 Ga. App. 598, 608 (1) (a) (607 SE2d 225) (2004) ("An order within a [dependency] proceeding deciding temporary custody of the child is a 'final order,' within the meaning of [OCGA §] 5-6-34 (a) (1), from which a direct appeal lies."). "Under Georgia law, visitation rights are a part of custody." *Vines v. Vines*, 292 Ga. 550, 551 (2) (739 SE2d 374) (2013). Accordingly, the juvenile court's April 2021 temporary order addressing the mother's visitation rights is directly appealable.

The father argues that the mother cannot challenge the juvenile court's July 2019 temporary order or any other orders issued more than 30 days before the date she filed her notice of appeal. We disagree. Generally a notice of appeal must be filed within 30 days after entry of an appealable decision or judgment. OCGA § 5-6-38 (a). However, where, as here, a direct appeal is proper, "all judgments, rulings, or orders rendered in the case which are raised on appeal and which may affect the proceedings below shall be reviewed and determined by the appellate court." OCGA § 5-6-34 (b). This applies to earlier, unappealed orders issued in the dependency proceeding:

> Although the juvenile court made its [dependency] finding well over 30 days before [the appellant] filed her notice of appeal, a party may challenge the propriety of an earlier, unappealed [dependency] order in the course of a timely direct appeal from a subsequent order arising out of the [dependency] proceeding. This is true even if the party's enumerated errors relate solely to the earlier [dependency] finding and do not address the subsequent order supporting the timely direct appeal.

*In the Interest of J. R. P.*, 287 Ga. App. 621, 622 (1), n. 2 (652 SE2d 206) (2007) (citations and punctuation omitted). See also *In the Interest of S. J.*, 270 Ga. App. at 608 (1) (b) (dependency order relied upon by the juvenile court in deciding a custody issue was reviewable during direct appeal of the custody order in a dependency proceeding).

6

> Parties are foreclosed from subsequently challenging the conclusive effect of a [dependency] order only when the order has been reviewed on appeal and the challenged portion of the order either was or could have been considered by the appellate court or where the [dependency] order is used in unrelated proceedings, such as a proceeding to terminate parental rights.[4]

*In the Interest of I. S.*, 278 Ga. 859, 860-861 (607 SE2d 546) (2005) (citations omitted). Accordingly, the mother may challenge the propriety of any earlier, unappealed orders in the course of her timely direct appeal taken from the April 2021 temporary order arising out of the dependency proceeding.

2. We must also consider for purposes of this appeal what type of case is before us. The father argues that this case began as a dependency proceeding, but morphed into a custody modification proceeding when the juvenile court relieved DFCS of legal custody. This is incorrect.

Child dependency proceedings are brought on behalf of the child, focus on the needs of the child, and may include custody orders "best suited to the protection and

---

[4] "[Dependency] proceedings and parental rights termination proceedings are separate and distinct," and unappealed dependency orders are binding in separate actions to terminate parental rights. *In the Interest of I. S.*, 278 Ga. 859, 861, n. 6 (607 SE2d 546) (2005) (citation and punctuation omitted); accord *In the Interest of C. M.*, 258 Ga. App. 387, 387 (1) (574 SE2d 433) (2002).

physical, emotional, mental, and moral welfare of a child adjudicated as a dependent child." OCGA § 15-11-212 (a) (2); *In the Interest of J. N.*, 302 Ga. App. at 632 (1). "Although child custody determinations may be necessary in a [dependency] proceeding, the proceeding itself is to determine whether the child is [dependent] and is not an action brought to decide custody matters." *In the Interest of J. N.*, 302 Ga. App. at 632 (1) (citation and punctuation omitted); accord *In the Interest of J. P.*, 267 Ga. 492, 492 (480 SE2d 8) (1997). We find that temporarily awarding legal custody of the child to her biological father and relieving DFCS of further responsibility for the child merely turned this action into a private dependency action. See generally *In the Interest of C. A. J.*, 331 Ga. App. 788 (771 SE2d 457) (2015) (private dependency action brought by the child's grandmother); *In the Interest of G. R. B.*, 330 Ga. App. 693 (769 SE2d 119) (2015) (private dependency action brought by grandparents). This is true for at least two reasons.

First, the juvenile court is authorized under the dependency proceeding statutes to order a change in its award of temporary legal custody of a dependent child and relieve DFCS of further responsibility for the child:

> After transferring temporary legal custody of a child adjudicated as a dependent child to DFCS, the court may at any time conduct sua sponte

8

a judicial review of the current placement plan being provided to such child. After its review, the court may . . . make any other order relative to placement or custody outside DFCS as the court finds to be in the best interests of such child. Placement or a change of custody by the court outside DFCS shall relieve DFCS of further responsibility for such child except for any provision of services ordered by the court to ensure the continuation of reunification services to such child's family when appropriate.

OCGA § 15-11-212 (d); *In the Interest of B. K.*, 326 Ga. App. 56, 57-58 (755 SE2d 863) (2014) (juvenile court within its authority to change custody from DFCS to another party). There is no indication in the statute that this change of custody ends the dependency proceeding.

Second, OCGA § 19-9-23 governs actions to obtain a change of legal or physical custody. Under the version of that statute that was in effect at the time the father filed his complaint for a change of custody on June 20, 2019,[5] filing a separate

---

[5] OCGA § 19-9-23 was enacted in 1978, Ga. L. 1978, pp. 1957, 1958-1959, § 4, and its language regarding the filing of a separate complaint to change custody essentially has remained unchanged. From 1978 until the statute was revised in 2019, the law mandated that filing a separate action was the only method to seek a change in custody: "[a] complaint by the legal custodian seeking a change of legal custody or visitation rights shall be brought as a separate action" in the appropriate venue. Ga. L. 1978, pp. 1957, 1959, § 4 (b); see Ga. L. 1983, pp. 3, 112, § 52 (revising statute to reflect correct constitutional provision regarding venue). Effective July 1, 2019, the statute was revised to explicitly authorize a party to bring a counterclaim for

9

action in the appropriate venue was the only method to seek a permanent change of custody. OCGA § 19-9-23 (a) (2018) ("[A]fter a court has determined who is to be the legal custodian of a child, any complaint seeking to obtain a change of legal custody of the child shall be brought as a separate action in the county of residence of the legal custodian of the child."). "This Court repeatedly has noted that the language of OCGA § 19-9-23 requiring a party to bring a separate complaint to change custody is clear and unequivocal and is mandatory." *Pascal v. Pino*, 361 Ga. App. 212, 214 (1) (863 SE2d 694) (2021) (citations and punctuation omitted). Notwithstanding the denomination of his filing as a "complaint," the father did not file a separate action seeking a change of custody. We, therefore, do not construe the father's complaint for change of custody to be anything more than a request for a temporary change of legal custody during the dependency proceeding. See *In the Interest of M. F.*, 298 Ga. 138, 141 (1) (780 SE2d 291) (2015) ("substance, rather than nomenclature, governs pleadings") (citation and punctuation omitted).

For these reasons, the case before us is a dependency proceeding, and the juvenile court was obligated to comply with the dependency proceeding statutes. This

---

modification of legal or physical custody in response to a complaint initiated to change custody. Ga. L. 2019, pp. 904, 905, § 2; OCGA § 19-9-23 (d) (2019).

10

conclusion also negates the father's argument that the mother's direct appeal of the April 2021 temporary order should be dismissed because she fails to challenge any substantive ruling of the order. To support his argument, the father cites the rule that a judgment or order is not directly appealable under OCGA § 5-6-34 (a) (11) unless the case also involves "custody [as] an issue on appeal." *Voyles v. Voyles*, 301 Ga. 44, 47 (799 SE2d 160) (2017); accord *Capehart v. Mitchell*, 358 Ga. App. 86, 88 (2) (851 SE2d 846) (2020). This argument fails for two reasons. First, as stated previously, "[a]n order within a deprivation proceeding deciding temporary custody of the child is a 'final order,' within the meaning of 5-6-34 (a) (1), from which a direct appeal lies." *In the Interest of S. J.*, 270 Ga. App. at 608 (1) (a). Second, pretermitting whether the rule regarding orders entered in child custody cases applies to temporary custody orders entered in dependency proceedings, the mother in this appeal does specifically challenge the substance of the April 2021 temporary order permitting telephone visitation, claiming that this order, by inference, extended the father's custody of S. W. without including the requisite findings of fact or conclusions of law.

With these principles in mind, we turn to the merits of the mother's appeal.

11

3. In related enumerations of error, the mother asserts that the juvenile court erred by failing to enter a final disposition order following the September 8, 2020 final hearing. Indeed, it does not appear that a final disposition order has been entered in this case. However, it also does not appear from the record before us that the mother sought a final disposition order in the trial court. It is well settled that "a judgment must be entered before an appeal is taken." *Crimminger v. Habif*, 174 Ga. App. 440, 440 (330 SE2d 164) (1985) (citations and punctuation omitted); *G. M. J. v. State*, 130 Ga. App. 420, 422 (5) (203 SE2d 608) (1973) ("There can be no effective appeal from anything but a judgment . . . ."). "In the absence of a judgment in writing no question for decision is presented to the [appellate court]." *Seabolt v. Seabolt*, 220 Ga. 181, 181 (1) (137 SE2d 642) (1964); accord *Bishop v. State*, 176 Ga. App. 357, 358 (335 SE2d 742) (1985) (appeal subject to dismissal where party's claim addresses issue for which there is no written order). Under the circumstances here, the mother's argument regarding the juvenile court's failure to enter a disposition order provides nothing for this Court to review. See *West v. Life Ins. Co.*, 142 Ga. App. 877, 879 (2) (237 SE2d 239) (1977) (failure to rule on motion for partial summary judgment cannot be considered).

4. The mother also argues in related enumerations of error that the juvenile court's July 2019 and April 2021 temporary orders failed to comply with dependency proceeding statutory requirements mandating that the court include necessary findings of fact and conclusions of law in its orders. Specifically, the mother asserts that the juvenile court's orders failed to include required statutory findings that (a) DFCS or the father established by clear and convincing evidence that S. W. was dependent and her dependency was likely to continue, and (b) the change in custody to S. W.'s father was in her best interest and welfare. We agree with the mother that the juvenile court's orders are deficient.

A juvenile court in a dependency proceeding has the authority to enter an order "best suited to the protection and physical, emotional, mental, and moral welfare of a child adjudicated as a dependent child[.]" OCGA § 15-11-212 (a); accord *In the Interest of G. R. B.*, 330 Ga. App. at 700-701. This includes, in relevant part, "[g]rant[ing] or transfer[ring] temporary legal custody to . . . [a]ny individual, including a biological parent, who, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for such child" or to a public agency such as DFCS. OCGA § 15-11-212 (a) (2) (A) & (C); see also *In the Interest of A. L. S.*, 350 Ga. App. 636, 639 (1) (829 SE2d

13

900) (2019) (a juvenile court may assign temporary custody of a dependent child). "Pursuant to OCGA § 15-11-212 (d), the court may conduct a judicial review of the custody and placement arrangements of any child previously adjudicated as dependent, and may order a change in custody, if the court finds such change to be in the best interest of the child." *In the Interest of A. M.*, 350 Ga. App. 333, 334-335 (1) (829 SE2d 422) (2019); see OCGA § 15-11-212 (d) ("After transferring temporary legal custody of a child adjudicated as a dependent child to DFCS, the court may at any time conduct . . . a judicial review of the current placement plan being provided to such child. After its review, the court may . . . make any other order relative to placement or custody outside DFCS as the court finds to be in the best interests of such child."). Accordingly, the juvenile court was authorized to (a) change legal custody from DFCS to the father in the July 2019 temporary order, and (b) continue custody with the father and modify the mother's visitation rights in the April 2021 temporary order. As stated previously, however, the juvenile court's orders in this case failed to comply with the statutory requirements for dependency proceedings.

It is well settled that under OCGA § 15-11-111 (b) (2), "[a]n order entered following a hearing in a dependency proceeding shall include findings of fact" to be "made in accordance with OCGA § 9-11-52 (a)." *In the Interest of B. G.*, 345 Ga.

14

App. 167, 168 (1) (812 SE2d 552) (2018) (citations and punctuation omitted); accord *In the Interest of T. Y.*, 350 Ga. App. 553, 561 (829 SE2d 808) (2019); *In the Interest of D. L. G.*, 212 Ga. App. 353, 353 (1) (442 SE2d 11) (1994). These findings of fact must reflect consideration of the oral and written testimony offered by the parties and "state not only the end result of that inquiry but the process by which it was reached." *In the Interest of J. G.*, 350 Ga. App. 588, 591-592 (1) (829 SE2d 828) (2019) (citations and punctuation omitted). "[T]he facts must be found specially; and the conclusions of law must be stated separately, regardless of whether the order otherwise is sufficient for purposes of review." *In the Interest of T. Y.*, 350 Ga. App. at 561 (citation and punctuation omitted).

Here, at a minimum, the orders at issue should have included findings of fact demonstrating clear and convincing evidence that (a) present, not merely past or future, dependency existed, (b) the dependency resulted from the unfitness on the part of the mother, and (c) awarding custody to the father was best suited to the protection and physical, emotional, mental, and moral welfare of the child. See OCGA §§ 15-11-180 ("The petitioner shall have the burden of proving the allegations of a dependency petition by clear and convincing evidence."); 15-11-212 (a) (orders must be "best suited to the protection and physical, emotional, mental, and moral welfare of a child

15

adjudicated as a dependent child"); *In the Interest of A. L. S.*, 350 Ga. App. at 641 (1) ("The paramount concern in *any* change of custody must be the best interests and welfare of the minor child.") (citation and punctuation omitted); *In the Interest of G. R. B.*, 330 Ga. App. at 700 (record must contain evidence of present, not merely past or future dependency based on unfitness of a parent). However, neither the July 2019 nor April 2021 temporary orders included findings of fact or "any discussion of [the] facts of the case within the context of the applicable statutes, the standard of review, or governing case authority." *In the Interest of T. Y.*, 350 Ga. App. at 561. They likewise did not include any conclusions of law, but merely stated directives to the parties. Therefore, the orders do not comply with OCGA § 15-11-111 (b) (2).

In addition, both the July 2019 and April 2021 temporary orders failed to comply with other statutory fact-finding requirements. Under OCGA § 15-11-134 (b), "[a]ny order continuing a child's placement outside of the physical custody of his or her parent, guardian, or legal custodian shall be based on a finding by the court that return of such child to such custody would be contrary to his or her welfare." Moreover, "[f]indings under this Code section shall be made on an individualized case-by-case basis and shall be documented in the court's written order." OCGA § 15-11-134 (c). Neither the July 2019 nor the April 2021 temporary orders — both of

16

which continued S. W.'s placement outside the mother's custody by awarding sole custody to the father — included any finding by the court that, at the time of the orders, return to the mother's custody would be contrary to the child's welfare as required by OCGA § 15-11-134. Nor did the orders include a finding that the July 2019 temporary transfer of legal custody to the father, which was continued by inference in the April 2021 temporary order, was in the best interests of S. W., as required by OCGA § 15-11-212 (d).

Moreover, if we construe the July 2019 temporary order as a disposition order — since it was the only order entered after the June 21, 2019 disposition hearing that could constitute a disposition — it failed to comply with OCGA § 15-11-213. That statute mandates that "[a]ny order of disposition shall contain written findings of fact to support the disposition . . . ." The juvenile court's July 2019 temporary order did not contain any written findings of fact supporting its change of temporary legal custody from DFCS to the father. In fact, as the mother correctly argues, the order did not contain any finding, much less a finding by clear and convincing evidence pursuant to OCGA § 15-11-180, that S. W. was dependent at the time of the order or that such dependency was likely to continue. See generally *In the Interest of G. R. B.*, 330 Ga. App. at 700 ("the record must contain evidence of present [dependency], not

17

merely past or potential future [dependency])" (citations, punctuation, and emphases omitted). Based on the foregoing, we agree with the mother that the juvenile court's July 2019 and April 2021 temporary orders are deficient.

5. To the extent that the mother challenges the merits of the juvenile court's orders, we are unable to address any such issues, given the absence of required findings in the orders. See generally *In the Interest of J. B.*, 241 Ga. App. 679, 681 (3) (527 SE2d 275) (1999).

Because the juvenile court failed to include the appropriate findings of fact and conclusions of law in both its July 2019 and April 2021 temporary orders, we vacate those orders and remand the case to the juvenile court for resolution of the temporary custody determination and dependency petition using the proper standards and issuance of a proper order. See *In the Interest of T. Y.*, 350 Ga. App. at 560-561 (case remanded where juvenile court failed to enter appropriate findings of fact and conclusions of law in order denying mother's motion for return of custody in dependency action); *In the Interest of J. B.*, 241 Ga. App. at 681 (1) (case remanded where court "inappropriately treat[ed] a [dependency] determination as part of a custody determination which does not require separate, specific findings of fact").

18

On remand, the juvenile court shall hear evidence relevant to the child's current status and enter a disposition order containing findings of fact to support the order. See OCGA § 15-11-213 (setting forth factors to be considered before court enters disposition order and the requirement of written findings of fact); see generally [*Scott v. Scott*, 276 Ga. 372, 377 (578 SE2d 876) (2003)] (noting that whether a change of custody is warranted depends on the factual situation at the time the change would occur).

*In the Interest of A. L. S.*, 350 Ga. App. at 641 (1).

*Judgments vacated and case remanded with direction. Doyle, P. J., and Reese, J., concur.*