**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 20, 2022**

# In the Court of Appeals of Georgia

A22A0655. IN THE INTEREST OF M. C. et al., CHILDREN (MOTHER).

GOBEIL, Judge.

The mother appeals from an order of the Fulton County Juvenile Court continuing to find her five minor children, Mq. C., Mi. C., A. M., Z. M., and J. M., dependent and maintaining temporary custody of them with the Fulton County Department of Family and Children Services (the "Department"). On appeal, the mother contends the juvenile court erred in: (1) finding that the Department had proven the children's dependency by clear and convincing evidence; and (2) admitting the Department's court report prepared by a case manager over the mother's objection. For the reasons that follow, we vacate the juvenile court's dependency determination and disposition order and remand the case for further proceedings.

"[O]n appeal from an order finding a child to be a dependent child, we review the juvenile court's finding of dependency in the light most favorable to the lower court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child is dependent." *In the Interest of S. C. S.*, 336 Ga. App. 236, 244-245 (784 SE2d 83) (2016). Similarly, when reviewing "an order . . . extending temporary custody of the children to [the Department], we construe the evidence in the light most favorable to the juvenile court's findings." *In the Interest of A. T.*, 309 Ga. 822, 822 (711 SE2d 382) (2011).

So viewed, the record shows that the mother has five children, Mq. C. (born March 25, 2009), Mi. C. (born August 16, 2011), A. M. (born November 20, 2012), Z. M. (born January 5, 2015), and J. M. (born November 1, 2017). In April 2018, during a medical visit, doctors observed that Mi. C. and Z. M. had injuries consistent with child abuse, including internal injuries and other visible marks and bruises. Both children disclosed that their mother's boyfriend[1] had disciplined them by punching, slapping, and whipping them with wet leather belts. Mq. C., Z. M., and A. M. all had old scars resembling that of a belt and a switch. Law enforcement detained the mother's boyfriend and charged him with child cruelty and family violence, but he

---

[1] The boyfriend is not the father of any of the children.

was released on bond a few days later. The Department issued a safety plan prohibiting the boyfriend from having any contact with the children, but the boyfriend returned to live at the home with the mother after he was released on bond. As a result, on April 20, 2018, the juvenile court granted the Department's request for an ex parte emergency order, placing the children in the Department's custody.

On April 30, 2018, the Department filed a dependency petition as to all five children. The petition alleged that the children had sustained injuries that could not be explained by the mother and her boyfriend; the mother had neglected the children by failing to provide them with adequate supervision; and the mother admitted to the use of marijuana in the past. The Department developed case plans for each of the children recommending concurrent reunification and adoption.

After a hearing on June 27, 2018, a transcript of which does not appear in the record, the juvenile court issued an order finding the children dependent because they have been abused or neglected and are in need of protection. Specifically, the court made the following findings: (1) the children had injuries that could not be explained by the mother; (2) the children had physical injuries such as marks and bruises and they disclosed that they had been disciplined by being struck or whipped by the mother's boyfriend with a belt; (3) the mother failed to protect the children from

3

being physically abused by her boyfriend; (4) the mother failed to provide the children with adequate supervision without the Department's assistance; (5) the mother admitted to using marijuana in the past; and (6) the mother had violated the Department's safety plan by allowing her boyfriend back into the house with the children.

After a review hearing on July 30, 2018, the juvenile court transferred temporary legal custody of the children to the Department, and approved the Department's case plans for reunification for each of the children. In an order dated January 15, 2019, the juvenile court noted that the mother had been referred for a parent aide, parenting classes, anger management, domestic violence and substance abuse assessments, and individual therapy. The court acknowledged that the mother has been compliant with parts of her case plan by completing anger management and securing housing and employment. Nevertheless, the court continued: "Although the mother has actively participated in the case plan for reunification and has worked diligently to improve her circumstances, immediate reunification is not feasible because the mother has not completed her case plan for reunification at this time." Because the children remained dependent, the court continued their current placements with the mother having supervised visitation. In subsequent review orders

dated February 13, 2019, May 20, 2019, July 12, 2019, and February 14, 2020, the juvenile court continued to find the children dependent and that returning them to the mother's custody was not in their best interest. The juvenile court also denied the mother's motion to return the children to her custody.

At a July 7, 2020 status hearing, the Department sought to introduce as evidence "the Department's Court Report," dated June 30, 2020. The mother's counsel objected because she was not provided access to the records that formed the basis of the report. The court overruled the objection, finding that the report was based on the case manager's own knowledge, who was present and available for cross-examination.

The Department's case manager testified that the present permanency plan for the five children was concurrent reunification, guardianship, and adoption. Before the mother could be reunified with the children, she was required to complete a parental fitness assessment, a domestic violence assessment, individual and family therapy, obtain adequate housing and employment, and complete a substance abuse program. The case manager explained that part of the mother's substance abuse treatment program required her to perform community service hours, but she had failed to complete any of her required hours. Additionally, the mother had only been tested

twice for drugs since November 2019 because "they couldn't get in contact with [the mother]" for a few months.

The case manager further testified that all of the children, except for Mq. C.,[2] were placed with or approved to be placed with either relatives or fictive kin as permanent guardians. The children had been in their placements for over two years and were stable in their current homes. The Department asked that the court move forward with non-reunification with guardianship for the children in their current placements.

The guardian ad litem ("GAL") recommended that the children remain in their current placements with guardianships. She had spoken to the children, who all voiced a desire to remain in their current homes even though they loved their mother. The GAL also opined that based on the length of time that the children had been living in their homes, approximately two years, maintaining the current placements would be the most stabilizing arrangement to achieve a safe and secure environment for the children.

On October 26, 2020, the juvenile court entered an order nunc pro tunc to July 7, 2020, finding that "[t]he children continue to be dependent children as defined in

_____

[2] The case manager indicated that Mq. C. would be placed with a relative soon.

OCGA § 15-11-2 (22) in that they are without proper parental care or control, subsistence, education as required by law, or other care or control necessary for their physical, mental[,] or emotional health or morals." The court highlighted that the mother had completed the parental fitness, psychological, psychiatric, domestic violence, and substance abuse evaluations, as well as secured housing and a job. Although the mother had been participating in an outpatient drug treatment program, she had not been able to attend since the start of the COVID-19 pandemic. Additionally, the children had received services since being placed in the Department's custody as follows: Mq. C. (diagnosed with ADHD) was placed in a therapeutic foster home and participated in therapy, behavioral services, and medication management; Mi. C. and A. M. (both diagnosed with ADHD) received weekly therapy, had 504 education plans, as well as medication management; and Z. M. participated in play therapy, medication management, and was in need of a 504 plan.[3]

The court explained that it was necessary for the children to continue in their current placements for their safety, and the "placements allow the mother greater access to the children until the children can be transitioned back into her care, and the

_____

[3] The youngest child, J. M., was not in need of any current services.

7

placements are the guardianship resources." Additionally, the Department did not intend to petition for the termination of the mother's parental rights. The court acknowledged that the mother had "actively participated" in her case plan for reunification and "worked diligently to improve her circumstances." Nevertheless, the court concluded that immediate reunification was not feasible at this time because the children continue to be in need of services and the mother has not completed her substance abuse treatment. As a result, the court continued the current plan of reunification concurrent with guardianship and adoption. This appeal followed.

1. The mother argues that the juvenile court's finding of dependency was not supported by the evidence. She highlights that the Department failed to show that she is unfit to parent the children. The mother maintains that she completed the requirements of her case plan, and the court's finding that the children remained dependent is based on "incompetent evidence and a misstatement of the facts."

Under Georgia's Juvenile Code, the juvenile court may place a minor child in the protective custody of the Department where the petitioner shows, by clear and convincing evidence, that the child is a "dependent child." See OCGA §§ 15-11-150 (petition alleging dependency); 15-11-152 (contents of petition alleging dependency); 15-11-180 (burden of proof). As relevant here, the Juvenile Code defines a

8

"[d]ependent child" to include one who "[h]as been abused or neglected and is in need of the protection of the court[.]" OCGA § 15-11-2 (22) (A). Neglect occurs when a child is without proper parental care or control, subsistence, education or parental supervision. OCGA § 15-11-2 (48) (A)-(B). Factors to be considered in determining whether a child is without proper parental care or control include "[e]gregious conduct or evidence of past egregious conduct of a physically, emotionally, or sexually cruel or abusive nature by [a] parent toward his or her child or toward another child of such parent[.]" OCGA § 15-11-311 (a) (4).

> Consideration of past misconduct is appropriate because the juvenile court is not required to reunite a child with a parent in order to obtain current evidence of deprivation[4] or neglect. Nevertheless, the record must contain evidence of present dependency, not merely past or potential future dependency. Moreover, a finding of parental unfitness is essential to support an adjudication of present dependency. "Unfitness" in this respect refers to intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child.

---

[4] "Given the similarities between the definition of a 'deprived child' under the former Juvenile Code and that of a 'dependent child' under the current Juvenile Code, our previous decisions addressing the deprivation of a child are relevant to appeals involving the dependency of a child." *In the Interest of A. M. B.*, 361 Ga. App. 551, 555 (a) n. 2 (864 SE2d 713) (2021) (citation and punctuation omitted).

9

*In the Interest of G. G.*, 359 Ga. App. 374, 378 (857 SE2d 840) (2021) (citations and punctuation omitted). Additionally,

> [a]n order entered following a hearing in a dependency proceeding shall include findings of fact. OCGA § 15-11-111 (b) (2). Such findings of fact should be made in accordance with OCGA § 9-11-52 (a), which provides that a court must find the facts specially and state separately its conclusions of law.

*In the Interest of B. G.*, 345 Ga. App. 167, 168 (1) (812 SE2d 552) (2018) (citations, punctuation, and emphasis omitted).

Here, at a minimum, the juvenile court's dependency order should have included findings of fact demonstrating clear and convincing evidence that (a) present, not merely past or future, dependency existed as to the children, and (b) the dependency resulted from unfitness on the part of the mother. See OCGA §§ 15-11-180 ("The petitioner shall have the burden of proving the allegations of a dependency petition by clear and convincing evidence."); 15-11-212 (a) (orders must be "best suited to the protection and physical, emotional, mental, and moral welfare of a child adjudicated as a dependent child"); *In the Interest of G. R. B.*, 330 Ga. App. 693, 700 (769 SE2d 119) (2015) (record must contain evidence of present, not merely past or future dependency based on unfitness of a parent). The juvenile court signed

10

a seven-page dependency order, drafted by the State's counsel on behalf of the State's special assistant attorney general. The order does contain, briefly, separate findings of fact and conclusions of law, and states "[t]he children continue to be dependent children as defined in OCGA § 15-11-2 (22) in that they are without proper parental care or control, subsistence, education as required by law, or other care or control necessary for their physical, mental[,] or emotional health or morals." However, the court did not specify which of its factual findings supported its conclusion that the children remain presently dependent. Importantly, as the mother points out in her appellate brief, "parental unfitness is essential to support an adjudication of dependency[.]" *In the Interest of V. G.*, 352 Ga. App. 404, 406 (1) (834 SE2d 901) (2019) (citation and punctuation omitted). The juvenile court's order, however, "contains no finding whatsoever with regard to parental unfitness . . . [and this] deficienc[y] prevent[s] us, in this case, from making an intelligent review of the mother's . . . challenges to the sufficiency of the hearing evidence." *In the Interest of A. B.*, 350 Ga. App. 158, 159 (1) (828 SE2d 394) (2019) (citation and punctuation omitted).

Accordingly, we vacate the juvenile court's July 7, 2020 order, and remand the case for further proceedings in order for the juvenile court to make a finding

11

regarding the children's present dependency.[5] After the juvenile court enters a new judgment, with appropriate findings of fact and conclusions of law, the non-prevailing party may file another appeal if necessary. See *In the Interest of A. B.*, 350 Ga. App. at 159 (1); *In the Interest of K. K.*, 364 Ga. App. 82, 85-86 (874 SE2d 110) (2022) (vacating and remanding juvenile court's dependency order as the order did not contain any findings with respect to parental fitness).

2. The mother contends that the juvenile court erred in admitting the Department's court report at the July 7, 2020 hearing over her objection. She further asserts that she was harmed by the juvenile court's reliance on a statement contained in the court report that her hair follicle drug screen was positive for cocaine. According to the mother, the Department failed to lay an evidentiary foundation to admit the drug screen. However, in light of our holding in Division 1 (vacating the juvenile court's order containing its dependency finding), we need not address these arguments at this time.

*Judgment vacated and case remanded with direction. McFadden, P. J., and Land, J., concur.*

---

[5] On remand, the juvenile court may hold another hearing, if necessary, to address the children's present dependency.